JOHN ZABEL AND JOSEPH HARMON v. LEVI A. HARSHMAN, DRAIN COMMISSIONER.

[See *ante*, 270.]

*Drains—Jurisdiction of township commissioner—County drain—Officers de facto.*

1. A township drain commissioner has no jurisdiction to locate a township drain upon the line of a drain laid by the county drain commissioners, unless such first drain has been legally vacated or abandoned. *Tomlin v. Newcomb*, 70 Mich.——(38 N. W. Rep. 315).

2. The action of county drain commissioners, who assume to act as such, and are at least officers *de facto*, as far as it falls within the authority conferred upon such officers, is not open to collateral attack.

So *held*, where two of the three commissioners composing the board were members of the board of supervisors which appointed them, and the record of their proceedings showed a want of notice to parties interested of the application to the judge of probate for the appointment of commissioners to ascertain the necessity for the drain, which objections would be fatal if urged by an interested party prior to the construction of the drain and the completion of the necessary proceedings therefor.

3. A township drain commissioner, before proceeding to construct a drain, must obtain a release of the right of way and of damages, or a condemnation of such right of way, and the compensation therefor must be ascertained.

4. A drain located, established, and constructed by county drain commissioners under color of the statute, and its cost and expense having been paid for by the parties assessed without objection as to any illegality or irregularity in the proceedings, and having been in use and acquiesced in as a public drain for 15 years or more, must be regarded and recognized by the township drain commissioner as a public drain, duly and legally established.

Appeal from Monroe. (Kinne, J.) Argued February 1, 1889. Decided April 12, 1889.

Bill filed to restrain the construction of a drain. Complainants appeal from decree dismissing bill. Decree reversed and one entered granting relief prayed for. The facts are stated in the opinion.

*Grosvenor, Bragdon & Grosvenor,* for complainants.

*Ira G. Humphrey* and *O. A. Golden,* for defendant.

CHAMPLIN, J. This case was before us upon demurrer to the bill of complaint at the January term, 1888 (*ante* 270), when the demurrer was overruled, and the cause remanded for proofs.

The bill of complaint states, and the proofs show, that in 1868 the county drain commissioners of Monroe county laid out a drain in the town of Summerfield, in said county, some four or five miles in length, passing through lands owned by complainants, for which they were assessed, and that the drain so established was constructed and has been in use as a public drain since 1870 or 1871, and known and called the "Stacy Drain;" and that complainants and others drain into this public drain, and are greatly benefited thereby.

That in 1886 the defendant, as drain commissioner, acting upon an application to locate and establish a drain in the township of Summerfield, proceeded to locate and establish a drain upon the northern part of the Stacy drain, namely, from its northern terminus to the north line of complainant Harmon's land, and upon the identical line of the Stacy drain.

The bill of complaint also charged that defendant was disqualified from acting because he owned land that was assessed for benefits when the Stacy drain was constructed, and was drained into it; and it charged that his action for that reason was fraudulent.

The proof shows that, in order to remove the disqualification, he sold 10 acres off from a portion of the west side

of his land before he received and acted upon the application, but his testimony shows that the cellar of his house is drained into the Stacy drain. There is a tile drain from his cellar to the highway, and thence a ditch connects with the Stacy drain. The facts need not be stated at large in order to reach a conclusion.

The undisputed facts bring the case directly within the principle of law laid down in *Tomlin v. Newcomb,* 70 Mich. —— (38 N. W. Rep. 315), which holds that a township drain commissioner has no jurisdiction to locate a township drain upon the line of a drain laid by the county drain commissioner, unless such first drain was legally vacated or abandoned. In this case the Stacy drain laid by the county drain commissioners was neither vacated nor abandoned, but had been in constant use for more than 16 years, and its public character had been disputed by no one.

The court below dismissed the bill of complaint, because it appeared from the proof that in 1884 the then township drain commissioner, acting upon the theory that the Stacy drain was a legal drain, instituted proceedings to clean out, deepen, widen, or extend the same, and the complainants, with others, filed their bill, and obtained an injunction restraining the drain commissioner from further action, and, on hearing, a decree was granted perpetually enjoining the commissioner from further proceeding, and hence the complainants are estopped by that decree, which was entered February 14, 1884; the learned judge stating that the grounds of the bill in that case and of the decree were that the Stacy drain was not a legal drain, and the proceedings to lay it out were illegal and void, and they could not complain if the defendant had proceeded upon the same theory, and treated the Stacy drain as illegal and void.

The files of the case alluded to were introduced in evidence in this suit, from which it appears that a bill of complaint was filed December 16, 1882, by complainants, with others,

setting up that the township drain commissioner had taken steps to locate, establish, and construct a drain in the township of Summerfield to be called the "Stacy Drain," and claimed to have established and located said drain according to a survey, and describing the route thereof, and had applied to the probate court for the appointment of commissioners.

The bill sets up certain irregularities in the assessment, particularly in assessing only half of the amount to be raised in one year; that contracts were let, and some of them were awarded to complainants, and that a minor son of the drain commissioner was also awarded a contract through higher lands than those of complainants, that could be done sooner than the wet and marshy portion they had contracts for; that some of the lands were non-resident, and would require a long time to realize the tax assessed against them; and that in consequence they would be postponed to the son of the commissioner in getting their pay.

The bill also alleged that the proceedings were defective in not giving a proper description of the lands proposed to be taken, and that the entire line was made up of an uncertain line, without giving any width or depth or *data* from which the land taken could be described. Other reasons were alleged why the proceedings were illegal.

The prayer of said bill is as follows:

"That the said Jerome Trombley, treasurer and collector as aforesaid, his attorneys, counselors, solicitors, officers, and agents, may be restrained and enjoined by the order and decree of this court from collecting and receiving any and all taxes placed upon the assessment and tax roll of said Summerfield, now in his hands, which are assessed and taxed against the lands of your orators, and of all other persons which are so assessed and taxed, for the benefit of said Stacy drain, and for the establishment, locating, and constructing the same; and that the levy, and all the proceedings for assessing such taxes for said drain, so far as the same has now been had, may be declared by this court to be irregular, illegal, and void, and of no force and effect.

"And that by like order and decree of this court the supervisor of said town of Summerfield who shall hold said office at the time of extending the taxes on the assessment roll of said township in the year A. D. 1883 may be directed and required to place upon said roll the full amount of taxes apportioned and charged for the locating, estab'ishing, constructing, and maintaining said Stacy drain, and charge and extend the same on said roll against the several pieces of land against which the same are charged and apportioned by the report of said drain commissioner in relation to said drain, a copy of which has been served upon said supervisor. Or in default thereof, and of said decree, that the entire proceedings for establishing, locating, constructing, and excavating said drain may be declared to be irregular, illegal, and void, and that the same may be set aside, quashed, and held for naught.

"And that your orators may have such other relief and such further relief in the premises as the nature of their case may require, and as shall be agreeable to equity and good conscience."

It will be observed that there is nothing whatever in this bill of complaint referring in the remotest manner to the Stacy drain which had been laid out and established by the county commissioners. Nothing is said about its being an application to widen or deepen an existing drain, but the application and proceeding was to locate, establish, and construct a drain to be called the "Stacy Drain."

After certain proceedings were had under this bill of complaint, and on August 14, 1883, the complainants in that bill filed the following petition, namely:

"Your petitioners, Elbridge G. Goodrich, Thomas H. Leach, John Zabel, and Joseph Harmon, respectfully show to the court that they are a part of the above-named complainants, who heretofore, to wit, on the sixteenth day of December, 1882, filed their bill of complaint in this cause against the above-named defendants, to obtain certain relief as in said bill prayed, in relation to a certain drain called the 'Stacy Drain,' more particularly described in said bill, which relief to a certain extent was granted by this court by an interlocutory decree and order signed and entered in said cause on the twentieth day of February, A. D. 1883, and by

a further order and decree made and entered therein March 10, 1883, reference to which orders and decrees is hereby made.

" And your petitioners allege that they are still willing and anxious to have said Stacy drain constructed and completed as the same is laid out, and are also still willing to perform and complete their contracts for the excavation thereon, and to pay the taxes assessed upon them for said drain, if the same can be done so as to bring about and complete said drain as intended. But certain difficulties have arisen and have come to the knowledge of your petitioners since said bill was filed, which difficulties threaten to defeat their equities as set forth in said bill, and even to entirely prevent and defeat the construction of said drain, to the great and manifest injury of your petitioners, and of all others interested in said drain, and to result in great pecuniary loss and damage to your petitioners, and to others interested.

" Your petitioners have discovered that the proceedings of the township drain commissioner of the township of Summerfield (who is one of the defendants in said bill of complaint) to lay out, establish, and construct the Stacy drain as set forth in said bill was in truth and in fact a proceeding to widen and deepen a Stacy drain which had been heretofore laid out and constructed by a county drain commissioner of Monroe county, and which drain is by the statute placed under the charge of said county drain commissioner and his successors in office, and not within the jurisdiction of said township drain commissioner, so that said proceeding of said township drain commissioner was irregular and unauthorized.

"The one-half only of the taxes for the construction of said drain was levied upon the assessment roll for the year 1882, leaving one-half of said tax to be levied in 1883, some part of which tax of 1882 has been paid, for a part notes have been given under the order of this court, and a part has been returned unpaid. Whether, under the statute as construed by this court, the township drain commissioner will cause the remaining one-half of said tax to be levied in 1883, your petitioners cannot say.

" If said commissioner does not determine to cause such remaining half to be levied, there is no power to compel him to do so, if his proceedings for imposing said tax are illegal; and, if he does take steps to cause said tax to be levied, the collection may be resisted, if the tax is illegally imposed. So that in either event said remaining half of said tax is not

likely to be collected in full. This being apparent, and the entire amount of said tax being necessary to pay for the construction of said drain under the contracts as awarded, the contractors will hesitate to perform their several contracts so long as their compensation is uncertain, so that a part of said contracts, at least, are not likely to be performed.

"If your petitioners proceed to complete their several contracts as made, there is a fair chance that they will not receive full compensation therefor. At any rate, if their contracts are fulfilled, and other contracts are not performed, a portion of said drain will be completed, while other parts will not be touched. In that situation said drain can benefit no one, and will result in a useless waste of money and labor, besides creating a nuisance prejudicial to public health, by confining pools of water in the completed parts of said drain to stagnate and generate miasma.

"In this contingency your petitioners are unable to determine what course is wise for them to take, although desirous to secure said drain by paying the taxes and fulfilling their contracts in good faith. They have good reason to believe, and do believe, that said drain will not be completed in full, or to an extent sufficient to make it of any material benefit to any of the persons taxed for its construction. The entire proceedings to lay out, establish, and construct said drain being illegal, a tax for its construction may be successfully resisted by any person interested, and, although your petitioners are willing to fulfill on their part, they would be entirely powerless to compel others interested to acquiesce in the proceeding, so that their own action would avail nothing.

"Wherefore, in consideration of the premises, and of all the difficulties surrounding this case, your petitioners pray the court, as in and by their said bill they have, with their co-complainants, already prayed, that the entire proceeding for locating, establishing, constructing, and excavating said Stacy drain may be declared by the order and decree of this court to be irregular, illegal, and void, and that the same may be set aside, quashed, and held for naught; and that the notes, which your petitioners and their co-complainants were required to give by and under the order and decree of this court, may be ordered and decreed to be restored to your petitioners and their co-complainants; and that your petitioners may have such other relief, and such further relief, in the premises, as the nature of the case may require, and as shall be agreeable to equity."

There is nothing in this petition that attacks the validity

of the Stacy drain, as laid out by the county drain commissioners; but the petition asserts the invalidity of the proceedings by the township drain commissioner because he was attempting to widen and deepen an existing drain under an application to locate and establish a new one.

On February 14, 1884, the Hon. Chauncey Joslin, circuit judge, entered a decree in that cause, adjudging that the proceedings of the township drain commissioner were irregular, illegal, and void, and setting the same aside.   He further decreed a perpetual injunction against collecting the tax assessed as charged against any and all lands for the construction of the drain.   He then stated his reasons as follows:

"The injunction in this case is sustained for the following reasons:

"1.  Because in the attempt for the county commissioners to lay out the Stacy drain the land was condemned by commissioners appointed by the probate court without notice to the parties in interest, so that they were never authorized to pay the condemnation, and for that reason the drain never had any legal existence, and was only a private ditch like other ditches dug by one or more citizens by themselves.

"2.  The present proceedings by the township drain commissioner were without legal authority, as there was no petition to lay out and establish a new drain, and no legal condemnation of the land for such a drain, there having been no original proceedings,—no public drain.

"3.  It does not appear in the petition that the petitioners were freeholders."

It is quite likely that the decree made in that cause was right, but it could not affect the Stacy drain, which had been established and constructed by the county drain commissioners.   The validity of that drain was not at issue, and its legality was not questioned.   It had been constructed and acquiesced in for more than 14 years.   There is nothing in those proceedings or in that decree to estop the complainants from relying upon the legal existence of the Stacy drain.

The only thing that appears in the proofs in this case to

affect the validity of the action of the county drain commissioners, which at that time consisted of a board composed of three persons, is that two of them were supervisors when they were appointed drain commissioners by the board of supervisors. It is also claimed that the proceedings of the county drain commissioners, introduced in evidence by the complainants, show upon their face that no notice was given to parties interested of the application to the judge of probate for the appointment of three commissioners to ascertain the necessity for such drain, and to appraise the damages, and it was for the latter reason that Judge Joslin declared the proceedings to be void. And it is claimed that the proceedings of the drain commissioners were void because two of them were supervisors when they were appointed.

Had the proceedings of the county drain commissioners been assailed by any party interested before the drain was constructed, and the assessments therefor raised and paid over, and the whole proceedings completed, on the ground above set forth, they could not have been sustained. But no one interested complained, so far as this record shows, but the drain has been built and the proceedings acquiesced in for more than 15 years. The county drain commissioners assumed to act as such, and they were at least officers *de facto*, and their action within the scope of the authority conferred upon county drain commissioners, is not open to collateral attacks.

In the suit which culminated in the decree of February 14, 1884, the existence of the Stacy drain came in only incidentally and collaterally, and, as before stated, its legality was not questioned in the pleadings.

The second reason given by the judge, so far as it stated that there was no petition to lay out and establish a new drain, is evidently based upon an error of fact. The record shows that the petition was to lay out and establish a new drain, as appears from the bill of complaint in that case; and

the petition afterwards filed by complainants, and set out above, states that under such petition the town drain commissioner was in fact proceeding to deepen and widen the Stacy drain, and the complaint was that the town drain commissioner had no authority to do so. I cannot see that complainants have taken inconsistent positions in regard to the county drain, and certainly they cannot be estopped by wrong reasons given for a right decree in their former suit. Their position in that suit with respect to the county drain was the same as it is in this, namely, that it was an existing established drain.

If the contention of defendant that the old Stacy drain is simply a private ditch is correct, his action as drain commissioner cannot be justified in letting contracts to construct a new drain, and making assessments therefor. Before he can do this he must obtain a release of the right of way and damages, or a condemnation of such right of way, and the compensation must be ascertained. He has not done this, and his action in letting contracts and making assessments to defray the expense and cost of construction is without authority of law, and the complainants would have a right to an injunction against further proceeding until such right of way is obtained.

As we view the case presented by this record, the main controversy is whether the Stacy drain laid out and constructed under the county drain commissioners is illegal and unauthorized, or whether it must be regarded by all parties, including the public, as an existing established drain. In the one case proceedings may be taken to establish a new drain, and in the other they may be taken to deepen or widen or both.

The question as to whether or not the Stacy drain, as established by the county drain commissioners, is an established drain existing for the benefit of the public, subject to the law as to widening or deepening, or is merely a private ditch, is properly raised by this record, and calls for our

decision. We think that, it having been located, established, and constructed under color of the statute, and the cost and expense paid for by the parties assessed without objection as to any illegality or irregularity, and having been in use and acquiesced in as a public drain for 15 years or more, it must be regarded and recognized by the township drain commissioner as a public drain, duly and legally established.

The decree of the circuit court must be reversed, and a decree entered here in accordance with the prayer of the bill, with costs of both courts to complainants.

The other Justices concurred.