BRADY v. HAYWARD.

1. DRAINS—REVIEW OF PROCEEDINGS—CERTIORARI.

A common-law writ of *certiorari* will lie to review proceedings to establish a drain which are alleged to be void for jurisdictional defects.

2. SAME—ASSESSMENT FOR BENEFITS—CONSTITUTIONALITY.

The provision of 3 How. Stat. § 1740e2, as amended by Act No. 111, Pub. Acts 1895, chap. 5, § 1, for the apportionment of the expense of constructing drains on the basis of the per cent. of benefits to accrue instead of in dollars and cents, is constitutional.

3. SAME—AMENDATORY LAWS—EFFECT ON PENDING PROCEEDINGS.

Proceedings begun under the drain law prior to the amendatory act of 1895 were not terminated upon the new law's becoming operative, but merely became subject to its provisions so far as they were applicable.

4. SAME—SUFFICIENCY OF APPLICATION—SIGNATURES.

3 How. Stat. § 1740b5, providing that an application to establish a drain shall be "signed by not less than five freeholders of the township or townships in which such drain, or the lands to be drained thereby and to be assessed therefor, may be situated, one or more of whom shall be owners of lands liable to be assessed for benefits," does not require the application to be signed by five freeholders of each township where the drain traverses more than one township.

5. SAME—DESCRIPTION OF ROUTE.

An application for the establishment of a drain which designates the proposed drain as a portion of B. river, a natural watercourse, which needs deepening, widening, cleaning out, and straightening from a point where the said river intersects the section line between two certain sections of a given township, thence in a northwesterly direction upstream, following the channel through stated sections, terminating at a point 80 rods south of the northeast corner of a given section and township, is sufficient, under the statute (3 How. Stat. § 1740b5) requiring the application to give "a general description of the beginning, the route, and the terminus" of the drain.

6. SAME—RUNNING STREAMS—INTERNAL IMPROVEMENTS—CONSTITU-
TIONAL LAW.

The fact that the proposed drain was to be created by clean-
ing out and deepening a running stream did not render the
work an internal improvement, within the prohibition of
article 14, § 9, of the Constitution.

7. SAME—LETTING OF CONTRACT—DIVISION INTO SECTIONS.

The drain commissioner had the right, in the exercise of his
discretionary power to divide the drain into sections for the
purpose of letting the contracts, to designate a section 15
miles long, although the total length of the drain was but 19
miles.

8. SAME—BIDDERS—SECURITY FOR PERFORMANCE.

The commissioner gave notice that persons desiring to bid on
the 15-mile section must deposit with their bid a certified
check for $1,000, which check should be forfeited to the drain
fund if their bid was accepted and they failed to enter into a
contract. The statute ( 3 How. Stat. § 1740*e* ) provides that
the commissioner shall make contracts with the lowest re-
sponsible bidder giving adequate security for the perform-
ance of the work. *Held,* that the requirement was a proper
one.

9. SAME—RELEASE OF RIGHT OF WAY—IRREGULARITIES.

The construction of a drain will not be stopped at the suit of
one whose land is in the assessment district, but is not crossed
by the drain, on the ground that releases for all the right of
way have not been given, where the commissioner acted in
good faith in procuring the right of way, and obtained re-
leases from all who he supposed were interested therein,
and the persons whose interests were overlooked have had
their rights adjusted by a decree of the court, upon their
application for an injunction, from which they have not ap-
pealed, and by which decree it was determined that their
lands would not be damaged by the construction of the drain.

10. SAME—STATE DRAINS—TOWNSHIP AND COUNTY COMMISSIONERS
—JURISDICTION.

3 How. Stat. §§ 1740*i*6, 1740*i*7, provide that the state board
of control shall no longer exercise control over drains con-
structed by the State, and that such drains shall be under the
care of the township drain commissioner. Section 1740*a*7 pro-
vides that the jurisdiction of the township drain commissioner
shall be limited to drains wholly within his township, and
that the county drain commissioner shall have concurrent
jurisdiction with the township drain commissioner, "and shall

also have jurisdiction over all other drains within his county." Section 1740*h*9 provides that drains theretofore constructed under any provision of law may be widened and deepened "under the provisions of this act." *Held*, that, where a drain traversing more than one township is to be laid over a portion of an old state drain, the county commissioner has jurisdiction of the proceedings.

Error to Sanilac; Beach, J. Submitted June 18, 1897. Decided September 14, 1897.

*Certiorari* by Michael Brady to review the action of Hiram S. Hayward, county drain commissioner, and William H. Burgess, judge of probate, in locating and establishing the Black River drain. From a judgment declaring the drain proceedings invalid, defendants bring error. Reversed.

*H. O. Babcock* and *William Dawson* (*Chadwick & McIlwain*, of counsel), for appellants.

*J. H. Farley* (*E. F. Bacon* and *E. F. Law*, of counsel), for appellee.

MOORE, J. This is a proceeding to review the action of the circuit judge in declaring, in a *certiorari* proceeding, that in the establishment of the Black River drain, in Sanilac county, the proceedings were invalid. The circuit judge does not give the reason for reaching the conclusion he did. The drain does not run through the land of the petitioner, but his land is within the assessment district, and he is liable to pay a tax of about $200 if the drain is constructed.

At the outset it is claimed by the defendants that the common-law writ of *certiorari* is not the proper remedy to secure a review of the proceedings. Inasmuch as the petition alleges that there are jurisdictional defects in the proceedings to establish the drain, we are inclined to dispose of the case as presented here. *Loree* v. *Smith*, 100 Mich. 252; *Moore* v. *McIntyre*, 110 Mich. 237.

It is objected that the law of 1885 is unconstitutional. This law has now been in force a little more than 12 years. Its construction has been before this court repeatedly, and it has been repeatedly held to be constitutional. *Mathias* v. *Cramer*, 73 Mich. 5; *Smith* v. *Carlow, ante*, 67. We see no reason for changing these decisions.

It is also objected that the basis of the assessment is illegal, because the apportionment is made upon the per cent. of benefits to accrue, and is not made in dollars and cents. There is some language used in the case of *Kinnie* v. *Bare*, 68 Mich. 633, that might give support to this contention. But the point was not involved in that case, and the learned judge who wrote the opinion characterized what he said upon that subject as a digression, and ended by saying, "I wish to say that I express no opinion upon the validity of the law authorizing assessments for benefits for the construction of drains, as the question was not argued in this case." Section 1740e2, 3 How. Stat., and the amendment as found in Act No. 111, Pub. Acts 1895, chap. 5, § 1, provide for the apportionment upon the basis of the per cent. of benefits to the township because of the benefit to the public health, or as a means of improving any highway, and also against lands according to the per cent. of benefit. The fact that a drain is established involves the finding of the fact that it is necessary and conducive to the public health. It is not conceivable, taking this fact into consideration, that a drain is not worth to the townships and to the land to be affected by it all that it costs. This being established, we cannot see any injustice in apportioning the cost of the drain in the manner provided by the statute. This has been done now for 12 years, and was done in the many cases which have been before this court for review during that time.

These proceedings were commenced prior to the amendments of the drain law as made in 1895. The application complied with the requirements of the law as it then existed. It is urged that the amendment of 1895, in rela-

tion to the persons who shall sign the application for the establishment of the drain, repealed the law of 1885, and that the commissioner could not go on from the point where the law of 1895 found the proceedings, but that all that had been done up to that point must be dropped, and the proceedings commenced anew; citing *City of Detroit* v. *Chapin*, 108 Mich. 136, and other cases. The record shows the requisite number of signers having the requisite qualifications required by the law as it existed at the time the proceeding was commenced to give the commissioner jurisdiction. The commissioner, after receiving the application, proceeded to make his first order of determination, and to get releases of right of way from the parties through whose lands the ditch was to run, before the law of 1895 became operative. This law does not purport to be the enactment of a general drain law that shall take the place of the old law, but simply amends a few sections of the old law to remedy some defects found therein. It left untouched section 1740*h*9, which provides, "Drains for which an application has been made  *  *  *  under any provision of law heretofore enacted may be laid  *  *  *  under the provisions of this act," and section 1740*i*5, "saving all acts done and all rights acquired at the time this act takes effect, and any proceeding had or begun may be carried forward and completed thereunder the same as they might have done had this act not been passed." It is impossible to read the law of 1885, with the amendments since made thereto, without coming to the conclusion that it was the intention of the legislature that drain proceedings which had been commenced were not to fail because of the amendments, but were to be carried forward to completion, subject to the provisions of the law as amended, so far as applicable. In the case of *City of Detroit* v. *Chapin*, *supra*, the act passed in 1895 did not purport to be an amendment of the law as it existed at that time, but was an entirely new law, covering the entire subject of taking private property for the use and benefit of the public, and, as stated in the opinion,

the act is materially different from the one repealed by it. We think the case comes within the principle announced in *Merkle* v. *Township of Bennington*, 68 Mich. 133; *Davenport* v. *Auditor General*, 70 Mich. 192; *Alexander* v. *City of Big Rapids*, Id. 224; *Moore* v. *Township of Kenockee*, 75 Mich. 332; *Dennison* v. *Allen*, 106 Mich. 295. The last-named case is directly in point.

It is urged that, where a drain goes through or into more than one township, the application to establish the drain must be signed by not less than five freeholders of each township where such drain is situated, or the lands to be drained thereby are situated, one or more of whom shall be owners of land liable to be assessed in each of said townships. The statute does not so read. Section 1740*b*5, 3 How. Stat., provides that the petition shall be "signed by not less than five freeholders of the township or townships in which such drain, or the lands to be drained thereby and to be assessed therefor, may be situated, one or more of whom shall be owners of the lands liable to be assessed for benefits," etc. If the legislature had intended that the petition must be signed by five freeholders of each township, it would have been easy for it to have said so.

It is said the description of the drain in the application is defective. The section of the statute just referred to provides that the application shall give "a general description of the beginning, the route, and the terminus thereof." We think the application in that respect was sufficient. *Kinnie* v. *Bare*, 68 Mich. 625, 80 Mich. 345.

The commissioner divided the drain, which is 19 miles long, into five sections, each of which was let separately. One of these sections is 15 miles long, and it is claimed that the commissioner violated the law in establishing so long a section. The same question was raised in the recent case of *Smith* v. *Carlow, supra,* in which an opinion was handed down at this term of court, and was decided against the position here taken by the plaintiff.

It is said, too, that this work, because of its magnitude,

is not a drain, within the meaning of the drain law, but is an internal improvement, forbidden by the Constitution. The same question was raised in *Smith* v. *Carlow, supra,* and was there decided against the contention of plaintiff. See, also, *Hall* v. *Slaybaugh,* 69 Mich. 484; *Gillett* v. *McLaughlin,* Id. 547.

In the notice of letting the contracts, the commissioner gave notice that persons desiring to bid on the 15-mile section must deposit with their bid a certified check for $1,000 as a guaranty that the person bidding would enter into a contract, which check should be forfeited to the drain fund if the person to whom the contract was awarded failed to enter into the contract. This is said to be error. Section 1740*e*, 3 How. Stat., provides: "The commissioner shall thereupon proceed to receive bids and let jobs for the construction of the sections, and make contracts with the lowest responsible bidder giving adequate security for the performance of the work," etc. It is very evident that the commissioner was not bound to receive bids and let contracts to every person who bid, regardless of their financial ability to enter into a contract if the bid should be accepted, and to perform the work if the contract should be entered into. The bidder must be a responsible bidder, able to give adequate security. In view of the magnitude of the proposed work, and of the expense and delay involved if it became necessary to readvertise and relet the contract, we do not think it can be said that the requirement made by the commissioner was an unreasonable one. Like requirements are made, as a rule, by public boards whose duty it is to let contracts for public improvements; and we think it a very wholesome requirement, and not in conflict with either the letter or the spirit of the statute.

Near the outlet of the drain was a farm, owned by Mr. Diem. He died. His widow was in possession of the farm, and the commissioner was led to believe by her and her son that she owned it. She gave a release of right of way, and the commissioner, supposing he had the right of

way for the whole length of the drain, proceeded to let the contracts. The record discloses that, after this was done, three of the sons filed a bill attacking the regularity of this proceeding in many particulars, and setting up that the right of way across their land had not been obtained, and asking that the construction of the drain might be enjoined. The circuit judge made a decree in that proceeding in which he found:

"The present complainants do not clearly show that they will be damaged in their lands by the construction of this drain so as to equitably invoke the extraordinary remedy of an injunction restraining the commissioner and contractors from proceeding with other portions of the drain, even if the jurisdictional question to the original application was plain and clear. It is ordered, adjudged, and decreed that the drain commissioner and defendant contractors be restrained from entering upon the premises of the complainants for the construction of the proposed drain thereon, from precipitating upon said lands any flow of water beyond the natural flow of water conveyed by said Black river, until the right of way over said premises is obtained. Defendant drain commissioner may take proceedings in probate court for the appointment of special commissioners in reference to these particular parcels, and to obtain the right of way through the same. The proceedings, aside from this, are decreed to be valid."

This decree was made the 6th of March, 1896, and no appeal has ever been taken from it. Under the provisions of this decree the commissioner filed a petition with the judge of probate, asking for the appointment of special commissioners, and that, when appointed, they might determine the necessity of taking the lands and fix the compensation to be made therefor. This was afterwards done, and no appeal has been taken from that action. It is now claimed that there were other children who were interested in this right of way, from whom releases have not been obtained; and it is also claimed that, because this release was not obtained before the contracts were made, the special commissioners should have been required to pass upon the necessity of taking all the property through

which the drain passed, and that it was the commissioner's duty to take entirely new proceedings to condemn the entire right of way. As already stated, the decree of the circuit judge was to the effect that these lands would not be damaged by the construction of this drain. The return of the commissioner shows that none of the said lands are subject to assessment for the construction of said drain. The return shows further:

"That the land is located at the outlet of said drain, and that across said land there is a rapid flow of water, and steep banks, and that neither the survey nor profile for said Black River drain contemplates the taking of any land across said description of lands, nor interfering with the banks nor the main bed of the present watercourse, further than to clear out some shoal places, and make the bed even, and remove the sand bars and rocks, and that it is not essential to the construction of said drain that any work be done across said lands. This respondent further says that the line of said drain across said land is an established watercourse, and has been for all time past in the memory of man."

The owners of said lands are not now making any complaint The commissioner acted in the utmost good faith in the procurement of this right of way. He obtained a release from the parties he supposed had the right to give it, and all of those who had a right to complain have done so in court. The question of the release of the right of way has been passed upon in such a way that they appear to be satisfied, as they have taken no appeal, and we do not think the proposed improvement can be stopped upon this application for a *certiorari*. We think this action of the circuit judge in making the decree he did was authorized by previous decisions of this court. *Cook* v. *Covert*, 71 Mich. 249; *Gillison* v. *Cressman*, 100 Mich. 591.

The description of the proposed drain in the application is as follows:

"The drain hereinafter proposed, known and hereby designated as a portion of Black river, is a regular natural

watercourse, and the same needs deepening, widening, cleaning out, and straightening from a point in said river where the said river intersects the section line between sections 4 and 5 of T. 11 N., R. 15 E., where said Black river has a well-defined channel, about 80 rods south of northeast corner of section 5 of said T. 11 N., R. 15 E.; thence in a northwesterly direction upstream, following the channel of said river, with a view to straighten, through section 5 of T. 11 N., R. 15 E.; through sections 19, 30, 29, and 32 of T. 12 N., R. 15 E.; through sections 1, 12, and 13, of T. 12 N., R. 14 E.; through sections 36, 25, 26, 23, 14, 15, 10, and 3 of T. 13 N., R. 14 E.; and through sections 34, 27, 28, 22, and 21 of T. 14 N., R. 14 E., terminating at a point 80 rods south of the N. E. corner of section 21 in T. 14 N., R. 14 E."

It is claimed that a large part of the Black River drain is laid over certain state drains established by the state board of control, and that these drains have never been discontinued. It is also claimed that these ditches have been put under the care and control of the township drain commissioner, and that the county drain commissioner has no authority whatever over these drains,—citing *Zabel* v. *Harshman*, 68 Mich. 273; *Tomlin* v. *Newcomb*, 70 Mich. 358. In each of these cases the bill was filed by the owner of the lands through whose premises the drain was located. In the case at bar the owners of the land where it is proposed to construct the new drain are not complaining. The State is not complaining. The town drain commissioners are not complaining. The drain commissioner returns that he has obtained releases of the right of way through all of the lands through which the drain is to pass. The land of the petitioner is not invaded, nor is he called upon to help defray expenses for an improvement for which he has once already paid. As long ago as in 1887 (3 How. Stat. § 1740*i*6) the legislature provided that the state board of control should no longer exercise control over drains con tructed by the State. It is urged that the control as given by section 1740*i*7 to the town drain commissioners, and not to the county drain commissioners. We think, however,

that the section just referred to should be construed in connection with section 1740*a*7, 3 How. Stat., which provides: "The jurisdiction of the township drain commissioner shall be limited to all drains having their beginning, entire course, and terminus within his township. * * * The county drain commissioner shall have concurrent jurisdiction with the township drain commissioner, and shall also have jurisdiction over all other drains within his county," etc.; and section 1740*h*9, 3 How. Stat., which provides: "Drains for which an application has been made, or which have been constructed or partly constructed under any provision of law heretofore enacted, may be laid, constructed, completed, relaid, cleaned out, widened, deepened, or extended, as the case may be, under the provisions of this act." The law should be so construed as to give, if possible, effect to all its provisions. If the last-named provisions are to be given effect, the contention of the petitioner cannot be sustained.

The legislature has indicated its desire to make this law a practical working law, by means of which the beneficial results intended to be accomplished by it can be wrought out. Section 1740*g*1, 3 How. Stat., provides that the proceeding shall not be declared "absolutely void in consequence of any error or informality of any officer in the location and establishment thereof, nor by reason of any error or informality appearing in the record of the proceedings by which any such drain shall have been located and established, nor on account of any irregularity or informality in the condemnation of right of way, nor for want of any record thereof; but the court * * * shall, if there be manifest error in the proceedings, allow the plaintiff in action to show that he has been injured thereby." *Matrau* v. *Tompkins*, 99 Mich. 528. The record discloses that the proposed undertaking is one of great magnitude and importance, involving a great many persons and a great many descriptions of land. The record shows that great care has been taken on the part of the drain commissioner to comply with all the provisions of the law.

A large sum of money has already been expended in making surveys, securing releases, in advertising, and in other ways.    It has been twice decided that the proposed drain is a public necessity conducive to the public health.    There is nothing to indicate any fraud or want of good faith.    Such defects as have been shown are not jurisdictional, but are mere irregularities that may be either waived or cured. It is not shown that injury has been done the petitioner, or will be done to him if the drain is constructed.    We think the writ of *certiorari* should have been dismissed, and it is so ordered, with costs.

The other Justices concurred.