## CITY OF DETROIT *v.* WEIL.

1. MUNICIPAL CORPORATIONS — CITIES — LOCAL ACTS — EMINENT DOMAIN—REPEALS.

   By the enactment of Act No. 541 of the Local Acts of 1903, providing that the city of Detroit should thereafter take private property for public use under the provisions of that statute and no other, it was intended that the proceedings should be instituted under the local act only, and no repealing statute having been afterwards passed, Act No. 149, Pub. Acts 1911 (4 How. Stat. [2d Ed.] §10155 *et seq.*), which did not expressly repeal the act, was not applicable.

2. SAME—CONSTRUCTION OF STATUTES—LOCAL LAW.

   There is no presumption of an intention on the part of the legislature to repeal a law to which no reference is made in a subsequent law, unless the intent is clear. Where a statute is enacted for a particular purpose, it is not to be held abrogated by subsequent general legislation, if the intent so to do is not so clear or distinct as to be unavoidable.

3. CONSTITUTIONAL LAW—UNIFORM TAXATION—SPECIAL ASSESSMENTS.

   The constitutional rule of uniformity of taxation does not apply to assessments for local improvements, which are governed by special rules, and are made upon the assumption that the property assessed is specially and peculiarly benefited by a public improvement.

4. SAME—TAXATION—SPECIAL ASSESSMENTS.

   It is within the province of the legislature to say that real estate, alone, shall be the subject of a special assessment, for the reason that special benefits accrue almost exclusively to lands, and under Act No. 541, Local Acts 1903, if the municipal council did not provide a smaller district for purposes of taxation, the entire property of the city must bear the burden.

5. SAME—CITIES.

   The determination of the city legislative body that the entire real estate of the city of Detroit has benefited by

a proposed improvement is final, unless fraud can be established or unless there is such a want or absence of benefit accruing to the assessed property as to indicate that the burden amounts to spoliation, not taxation.

6. SAME—CIRCUIT COURTS—RECORDER'S COURT OF DETROIT.
The recorder's court of the city of Detroit has exclusive jurisdiction of the taking of private property for public purposes by eminent domain proceedings, and a petition filed in the circuit court should be dismissed upon defendant's plea to the jurisdiction.

Certiorari to Wayne; Mandell, J. Submitted April 23, 1914. (Docket No. 116.) Decided June 1, 1914.

Petition by the city of Detroit against Henry M. Weil and others for the taking of private property for public use, etc. From an order sustaining a demurrer to defendant's plea to the jurisdiction, defendant Weil brings error. Reversed.

*John Miner,* for appellants.

*Edmund Atkinson (Richard I. Lawson,* of counsel), for appellee.

Act No. 541, Local Acts of 1903, provides in part as follows:

"An act to authorize the city of Detroit to take private property for the use and benefit of the public.

"SECTION 1. The common council of the city of Detroit is hereby authorized to take private property for the use and benefit of the public within the limitation of the State Constitution, and to institute and prosecute proceedings for that purpose, and all such proceedings on the part of the city of Detroit shall be held and prosecuted under the provisions of this act and no other: *Provided,* that this act shall not apply to cases where petitions have already been filed in the recorder's court under the provisions of act number one hundred twenty-four of the Public Acts of eighteen hundred eighty-three, as amended March twenty-ninth, eighteen hundred eighty-seven, July

third, eighteen hundred eighty-nine, and June first, eighteen hundred ninety-five.

"SEC. 2. Such proceedings may be commenced and prosecuted under this act whenever the common council shall have declared a public improvement to be necessary in the municipality, and shall declare that they deem it necessary to take private property, describing it, for such public improvement, designating it, and that improvement is for the use or benefit of the public. They shall, by resolution, direct the corporation counsel to institute the necessary proceedings in behalf of the municipality in the recorder's court of said city, to carry out the object of the resolution in regard to taking private property for the city. Before the institution of such proceedings, the common council shall, if it be their intention to assess any part of the damages awarded in such proceedings upon a special or local district, declare by resolution such purpose and fix such district, embracing only such real estate as in their opinion will be specially benefited by the improvement and they shall describe such district with reasonable certainty by well known boundaries, so that all persons owning real estate in such district may readily ascertain the facts."

"SEC. 15. When a verdict of the jury shall have been finally confirmed by the court, and the time in which to take an appeal has expired, or if an appeal is taken, on the filing in the court below of a certified copy of the order of the Supreme Court, affirming the judgment of confirmation, it shall be the duty of the clerk of the court to transmit to the common council, a certified copy of the verdict of the jury and of the judgment of confirmance, and of the judgment, if any, of affirmation, and thereupon the proper and necessary proceedings in due course shall be taken for the collection of the sum or sums awarded by the jury. The common council shall by resolution determine whether the whole or any just proportion of the compensation awarded by the jury shall be assessed upon the owners or occupants of real estate contained in the assessment district, already fixed and determined as hereinbefore provided, and the whole or any such just proportion so determined shall be assessed upon the owners or occupants of such taxable real estate, in proportion, as nearly as may be, to the advantage

which such lot, parcel or subdivision is deemed to acquire by the improvement: *Provided,* that in the case of opening and widening alleys, all damages for the taking of property for such opening or widening shall be assessed upon the property directly abutting the alley, or such portion thereof as is ordered to be opened or widened. The assessment shall be made and the amount levied and collected in the same manner and by the same officers and proceedings, as near as may be, as is provided in the charter of the municipality for assessing, levying and collecting the expense of a public improvement when a street is graded. The assessment roll containing said assessments, when ratified and confirmed by the common council, shall be final and conclusive and *prima facie* evidence of the regularity and legality of all proceedings prior thereto, and the assessment therein contained shall be and continue a lien on the premises on which the same is made until payment thereof. Whatever amount or portion of such awarded compensation shall not be raised in the manner herein provided, shall be assessed, levied and collected upon the taxable real estate of the municipality, the same as other general taxes are assessed and collected in such city."

The common council of the city of Detroit, seeking to provide for the public an adequate approach to the new Michigan Central depot in that city, and to pay the cost thereof out of the general treasury instead of by local assessment, caused a petition to be filed pursuant to the provisions of Act No. 149 of the Public Acts of 1911 (4 How. Stat. [2d Ed.] § 10155 *et seq.*), which act is entitled:

"An act to provide for the condemnation by State agencies and public corporations of private property for the use or benefit of the public, and to define the terms 'public corporations,' 'State agencies' and 'private property' as used herein."

This act contains no repealing clause.

The respondent and appellant is the owner of certain real estate which it was sought to condemn for

said public improvement, and brings the cause to this court by certiorari to review an order sustaining a demurrer to and overruling his plea to the jurisdiction of said court. It is appellant's contention that said Local Act No. 541 of 1903 in express terms requires all proceedings on the part of the city of Detroit to take private property for public use to be held and prosecuted under the provisions of that act, and no other, and was not repealed by Act No. 149, Pub. Acts 1911, and that the proceedings should have been instituted in the recorder's court of the city, as provided for in the act. Counsel for the city say that, by the terms of Local Act No. 541 of 1903, the common council of the city having adopted no resolution of an "intention to assess any part of the damages awarded in such proceedings upon a special or local district," as provided for in section 2, by virtue of section 15, which provides, "Whatever amount or portion of such awarded compensation shall not be raised in the manner herein provided, shall be assessed, levied and collected upon the taxable real estate of the municipality, the same as other general taxes are assessed and collected in such city," the burden of the improvement could not be placed on all the taxable property of the city, and must be limited to the real estate; that said provision in the local act is bad, for the reason that it is in violation of the constitutional provisions that there must be a uniform rule of taxation. Section 3, art. 10, Const.; section 11, art. 14, Const. 1850. With this view the learned judge agreed in overruling appellant's plea to the jurisdiction.

KUHN, J. (after stating the facts). It is clear from the reading of the local act of 1903 that it was the intention of the legislature that all proceedings to take private property for the use and benefit of the public in the city of Detroit should "be held and prosecuted under the provisions of this act and no

other." Act No. 149, Pub. Acts 1911, containing no repealing clause, it must also be clear that it did not repeal the local act in question. The general legal principles applicable were recently stated by this court in *Hopkins* v. *Sanders*, 172 Mich. 227, 235, 236 (137 N. W. 709), when it was said, in referring to other decisions upon this question:

"From them can be deduced the general principles that repeals by implication are not favored; that there is no presumption of an intention on the part of the legislature to repeal a law where no reference is made to it in a later act, unless the intent is clear, and, where an act is passed for a particular purpose it is not to be held as abrogated by subsequent general legislation, which may be sufficiently broad to include it, unless the intent to abrogate is so clear and distinct as to be unavoidable.  *  *  *

"An examination of the authorities on repeals by implication shows clearly a tendency to sustain local acts as silently excluded from the operation of subsequent general acts, where the legislative intent is not so clear and positive as to render it impossible to do so; and only where the implication of intention to repeal necessarily flows from the language used, and discloses a repugnancy between its provisions and those of the former law so positive that it is impossible to reconcile the two by any fair construction, will repeal by implication be declared."

See, also, *Lake* v. *Village of Cedar Springs*, 162 Mich. 569 (127 N. W. 690).

In considering the question of the unconstitutionality of the local act for the reasons urged by counsel for the city, the distinction between assessments for local benefits and a general tax must be borne in mind.

It is well settled in this State that the rule of uniformity of taxation provided for in the Constitution of the State has no application to assessments for local improvements. *Woodbridge* v. *City of Detroit*, 8 Mich. 274; *Motz* v. *City of Detroit*, 18 Mich. 495;

*Hoyt* v. *City of East Saginaw,* 19 Mich. 39 (2 Am. Rep. 76) ; *Sheley* v. *City of Detroit,* 45 Mich. 431 (8 N. W. 52).

The distinction between these assessments and a general tax is clearly set forth in 2 Cooley on Taxation (3d Ed.), pp. 1153-1155:

"Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for State and municipal purposes, and governed by principles that do not apply universally. The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay. This is the idea that underlies all these levies. The distinction between them and ordinary taxation has thus been pointed out in a recent case:

" 'A local assessment can only be levied on land; it cannot, as a tax can, be made a personal liability of the taxpayer; it is an assessment on the thing supposed to be benefited. A tax is levied on the whole State or a known political subdivision, as a county or a town. A local assessment is levied on property situated in a district created for the express purpose of the levy, and possessing no other function, or even existence, than to be the thing on which the levy is made. A tax is a continuing burden and must be collected at stated short intervals for all time, and without it government cannot exist; a local

assessment is exceptional both as to time and locality—it is brought into being for a particular occasion, and to accomplish a particular purpose, and dies with the passing of the occasion and the accomplishment of the purpose. A tax is levied, collected, and administered by a public agency, elected by and responsible to the community upon which it is imposed; a local assessment is made by an authority *ab extra*. Yet it is like a tax in that it is imposed under an authority derived from the legislature, and is an enforced contribution to the public welfare, and its payment may be enforced by the summary method allowed for the collection of taxes. It is like a tax in that it must be levied for a public purpose, and must be apportioned by some reasonable rule among those on whose property it is levied. It is unlike a tax in that the proceeds of the assessment must be expended in an improvement from which a benefit clearly exceptive and plainly perceived must inure to the property upon which it is imposed.'

"Not all these differences are necessarily existent in every case, but in the main the characterization is accurate as it is forcible."

For a review of other text-books and decisions of other courts on this subject, see *Arnold* v. *Mayor of Knoxville*, 115 Tenn. 195 (90 S. W. 469, 3 L. R. A. [N. S.] 837, and note, 5 Am. & Eng. Ann. Cas. 881) ; also *County of Adams* v. *City of Quincy*, 130 Ill. 566 (22 N. E. 624, 6 L. R. A. 155, and note).

By the terms of the local act it was designed to assess the cost of such a public improvement upon the real estate of a district which might or might not, in the legislative discretion, be coextensive with the geographical limits of the municipality or political subdivision where the improvement was made. The common council having failed to provide a smaller assessment district, and having determined that the cost should be borne by the city, it becomes a burden on all the taxable real estate of the city. Special assessments, as a rule, are not levied on personal property, but generally on real estate alone. The rule deducible from reading the authorities is that it is within the province of the legislature to say that the

real estate alone shall be subject to such a special assessment, for the reason that special benefits accrue almost exclusively to lands, so that generally, in works commonly classed as "internal improvements," the real estate alone has been taxed; and that the legislative authority, either of the State, or when properly authorized, of the municipality, may determine over what territory the benefits are so diffused as to render it proper to make all lands contribute to the cost. The legislature having conferred the power on the city by the local act in question to determine how much of the real estate in the city is benefited by the proposed improvement, their determination of the area benefited is final and conclusive, in the absence of fraud, or unless the absence of benefit makes it manifest that the burden amounts to spoliation, and not taxation. *Shimmons* v. *City of Saginaw*, 104 Mich. 511 (62 N. W. 725); 1 Page & Jones' Taxation by Assessment, § 555.

We are satisfied that the said Local Act No. 541 of 1903, because it provides a method of paying for public improvements by a special assessment which may or may not be upon all of the real estate of the city, as the council by proper resolution may determine, is not subject to the constitutional objection urged. The said act providing that all proceedings to take private property for the use and benefit of the public shall be brought under its provisions, and the pending proceedings being clearly of that character, it was improper not to bring them as the act clearly directs.

Appellant's plea to the jurisdiction of the circuit court should have been sustained.

The case is remanded to the circuit court, with directions to make such an order.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.