CILLEY v. SULLIVAN.

1. CONSTITUTIONAL LAW—SEWERS AND DRAINS—ASSESSMENTS—TAXATION.

> Under Act No. 185, Pub. Acts 1911, which provides that the drain commissioners shall agree upon the proportion to be paid by each county for the construction of a drain in both jurisdictions, that if a disagreement should result, an appeal shall be taken to the State highway commissioner, whose determination shall be conclusive as to assessments and all other subjects relating to the drain, the finding of the circuit judge that the statute is unconstitutional and would not support a proceeding in mandamus to compel the drain commissioner of Monroe county to act under the statute, jointly, with the commissioner of Lenawee county, was unwarranted, on the ground that the legislature could not provide for an appointment for a local assessment, without the assent of the electors of the district affected—since drain proceedings are of more than local interest and the draining of valueless lands is a subject of general public concern.

2. SAME—DRAINS—TAXATION—SPECIAL ASSESSMENTS.

> The cost of a drain of general State concern can be paid by local assessment, if made according to law; the assessment is valid on the basis that those who bear the cost of a public work are at the same time benefited to a corresponding degree by the increase in value of their property, and hence suffer no damage.

Certiorari to Monroe; Gilday, J.   Submitted June 15, 1915.   (Calendar No. 26,790.)   Decided July 23, 1915.

Mandamus by J. W. Cilley and another against Daniel F. Sullivan, drain commissioner of the county of Monroe, to compel respondent to act with the commissioner of Lenawee county in levying a special assessment for a drain.   An order denying the writ is reviewed by relator on certiorari.   Reversed.

*Thornton Dixon* and *J. N. Sampson,* for appellants.

*Willis Baldwin,* for appellee.

This is certiorari to mandamus, to review an order made by the circuit judge denying such relief. The proceedings involve the constitutionality of Act No. 185, Pub. Acts 1911, and the question is thus stated in the opinion of the circuit judge:

"This is an application for a peremptory mandamus to compel the respondent, as county drain commissioner of Monroe county, to act jointly with the county drain commissioner of Lenawee county, to deepen, widen, and extend the Swamp Raisin drain, a water course of about 17 miles in length traversing Monroe and Lenawee counties.

"It is admitted by respondent that the petition for such work is in accordance with chapter 7 of the drain law enacted in 1911, which chapter relates to the joint action of county drain commissioners on drains in, or affecting, more than one county. This chapter provides that the drain commissioners, jointly, shall agree upon the per cent. of benefits to be paid by each county on the construction of any drain, and after such agreement, each commissioner shall thereafter assess the individual parcels of land and townships at large in his own county. In case the drain commissioners cannot agree upon this division of the per cent. of the cost of the drain, then an appeal is provided to the State highway commissioner; and it is provided that his decision, on appeal, shall be final, not only in the matter of assessments, but upon all other matters pertaining to the drain about which the drain commissioners cannot agree.

"It is contended by respondent that these provisions are unconstitutional, and he declines to act further in the matter because, in this particular matter, of the very large expenses necessarily incurred in proceeding with it, the large total cost of the proposed proceedings, and the probability of future litigation over these matters.

"It is claimed that this chapter is unconstitutional for the following reasons: *First,* because when this

drain law was enacted, the State highway commissioner was an officer appointed by the governor, not elected by the people of the State; *second,* because the law attempts to confer authority upon persons outside of the county to levy a local special assessment, in which the State or the general public have no interest."

KUHN, J. (*after stating the facts*). The learned trial judge was of the opinion that the legislature did not have the power to provide for the appointment of a person to levy a local special assessment unless the people to be taxed, either directly or through their representatives, made such appointment, coming to this conclusion largely because of his opinion that the laying out and maintaining of drains is a matter of local and neighborhood interest only. In support of this conclusion he relies upon the cases of *Dawson* v. *Township of Aurelius,* 49 Mich. 479, 480 (13 N. W. 824) ; *Camp* v. *Township of Algansee,* 50 Mich. 4 (14 N. W. 672) ; *Hillyer* v. *Township of Jonesfield,* 114 Mich. 644 (72 N. W. 619) ; *Albert* v. *Gibson,* 141 Mich. 698 (105 N. W. 19).

In the case of *Dawson* v. *Township of Aurelius, supra,* an action in assumpsit was brought to recover the amount of the drain tax which the plaintiff had paid to the township treasurer under protest, and which the treasurer had subsequently paid out on the order of the township board. It was held that the moneys sued for had been paid out to the persons shown by the commissioner's report to be entitled to them, and that therefore the township could not be said to have misappropriated them, and should not be called upon to respond. In the opinion Mr. Justice COOLEY said:

"The laying out of drains is commonly a matter of mere neighborhood interest; they affect small bodies of land; the taxes laid are local assessments, and do not and cannot, under the statute, become a general

187 Mich.—29.

charge. In the performance of his duties, the commissioner is in no sense the agent of the township, and there is no township responsibility for his defaults or misconduct."

The petition for the drain in the instant case sets up the fact that the improvement was necessary for the good of the public health, and indeed without this allegation the petition would have been of no force. It may be true that in the sense in which the language was used by the learned jurist in the opinion quoted from above drains are a matter of local and neighborhood interest only. But in so far as they concern the public health we do not think that it can be said that they are matters of only local and neighborhood interest. Indeed, Mr. Justice Cooley, in his book on Taxation, discussing the question of drainage laws, says the following:

"Similar considerations apply in the case of drainage laws, which are enacted in order to relieve swamps, marshes, and other low lands of the excessive waters which detract from their value for occupation and cultivation, and perhaps render them worthless for use, and are likely at the same time to diffuse through the neighborhood a dangerous nuisance. If these may be drained at the expense of the owner, by special tax, there can be no doubt of the right of the State to make it his duty to drain them, as a matter of police regulation; the State coming forward to perform the duty at his expense, in case of its not being suitably or expeditiously performed by himself." Volume 2 (3d Ed.), p. 1132.

And again, in the paragraph entitled "Drains and Sewers," etc., p. 1168, he said:

"The expense of constructing drains in order to relieve swamps, marshes, and other low lands of their stagnant water is usually provided for by special assessments. The grounds on which this is done are not always very clearly shown in the statutes. Sometimes the ground indicated is that the drainage is important

to the public health; and in such cases the right to levy assessments for the purpose cannot plausibly be disputed. The special benefits from the enhancement of values must accrue mainly to the owners of the lands drained, who ought, therefore, to bear the expense. But the authority to levy assessments for draining lands, upon no other considerations than such as pertain to the improvement of the land as property, must, it would seem, be confined within limited bounds. It has been said that 'a tax cannot be levied upon any portion of the public for the construction of a drain in which the public is not concerned. Even the owner of the land benefited cannot be taxed to improve it, unless public considerations are involved; but he must be left to improve it or not, as he may choose.' But where any considerable tract of land, owned by different persons is in a condition precluding cultivation, by reason of excessive moisture which drains would relieve, it may well be said that the public have such an interest in the improvement, and the consequent advancement of the general interest of the locality, as will justify the levy of assessments upon the owners for drainage purposes. Such a case would seem to stand upon the same solid ground with assessments for levee purposes, which have for their object to protect lands from falling into a like condition of uselessness."

This very question has, however, been passed upon recently by this court in an opinion written by Mr. Justice McALVAY, in the case of *Attorney General* v. *McClear*, 146 Mich. 45 (109 N. W. 27), where the question involved was whether an act authorizing the appointment by the governor of a county drain commissioner was unconstitutional as contravening the right of local self-government. It was there said:

"It is urged by the relator that a drain commissioner is not an ordinary local officer; that he may be considered by the courts, and in fact is, an officer acting by virtue of the police powers of the State, and exercising its functions for the benefit of the public health. It is the settled law of this State that, independent of the

consideration of necessity on account of the public health, there is no authority in the legislature to enact laws for the condemnation of private property, and to levy taxes for the construction of drains, and that such legislative action is a provision for the exercise of those police powers inherent in every government for the protection of the people. The drainage laws of this State are framed and based upon this fundamental proposition. As the basis of every valid proceeding under these laws, the drain commissioner must find that the drain is necessary to the public health. *Brady* v. *Hayward,* 114 Mich. 326 [72 N. W. 233]; *Kinnie* v. *Bare,* 68 Mich. 625 [36 N. W. 672]; Cooley on Constitutional Limitations (7th Ed.), pp. 734, 770. The power of the State to care for the health and welfare of the people is conceded, but it is urged that the State already has all the official machinery essential to the complete exercise of its powers in that regard, the State and local boards of health being clothed with adequate authority. The State is not limited to any particular method or set of officials by and through which it shall perform its functions in the interest of the public welfare. The legislature may provide any suitable and proper method within the limitations of the power to be exercised. It is recognized that the power under consideration is frequently directly exercised in municipalities or districts by levying taxes and exercising the right of eminent domain for the construction of drains. Cooley on Taxation (2d Ed.), p. 684. Upon this proposition alone have the drain laws of this State been upheld by the courts. It follows that a drain commissioner is not a local officer, but an officer exercising public functions on behalf of the State under and by virtue of its police powers. His appointment then would not be in contravention of the principle of local self-government and unconstitutional, and the legislature could provide that such appointment be made by State authority."

It is urged by counsel for respondent that this opinion is not in harmony with the four cases cited *supra* and relied upon by the circuit judge. We are of the opinion that the decision in *Attorney General* v. *Mc-*

*Clear, supra,* is decisive of the question here involved, and are satisfied with the reasoning upon which it is based. As the State has become more populous, and with the progress of scientific thought and investigation, the question of the public health has become more and more recognized as a question of vital interest to the State at large, and it needs no argument to demonstrate that proper drainage is one of the very essential prerequisites to the creation of proper sanitary and healthful conditions. To hold that public drains which the legislature has determined may be constructed when necessary and conducive to public health, convenience, and welfare are matters of such purely local and neighborhood interest that the State at large has no interest therein, would, in our opinion, be entirely out of accord with modern thought and against good reason. We can see no reason why the cost of such a local improvement, which may be of general State concern, cannot be paid by local special assessment, so long as the assessment is made according to the law appertaining thereto, the theory of the special assessment being that those who are to bear the cost of the public work are at the same time to suffer no pecuniary loss thereby, their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay. See recent cases: *German Lutheran Church Society* v. *City of Mt. Clemens,* 179 Mich. 35 (146 N. W. 287) ; *City of Detroit* v. *Weil,* 180 Mich. 593 (147 N. W. 550).

We are satisfied that the provision in the act which confers authority upon the State highway commissioner, an officer who at the time that this suit arose was appointed by the governor, to act as arbitrator in drain proceedings, is not unconstitutional as invading the right of local self-government. The order of the trial judge is therefore reversed and the pro-

ceedings remanded, with directions that the writ of mandamus issue as prayed for.

BROOKE, C. J., and STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred. BIRD, J., did not sit.

The late Justice MCALVAY took no part in this decision.