PATTERSON *v*. MEAD.

. 148  659
ı f150  ⁹259

|148    659
|152    ³261

⸱ 148    659
⸴f155   ⁵685ᴵ

148    659
f156   ⁵  2

1. DRAINS — ESTABLISHMENT — REGULARITY OF PROCEEDINGS — STATUTORY PRESUMPTION.

Where proceedings were taken to formally establish certain drains and the landowners released the right of way, and the public has been in possession of, and has exercised dominion over, the right of way so acquired, and the drains so laid, for upwards of 15 years, section 4381, 2 Comp. Laws, if given a prospective operation only, conclusively establishes the regularity of the proceedings.

2. SAME — IMPROVEMENT — PROCEEDINGS—JOINDER OF SEVERAL DRAINS.

There is no objection to a single proceeding by the county drain commissioner to open, widen, straighten, deepen, and extend, three drains, established· by township drain commissioners, where they in fact constitute one drainage canal, no portion of which can be much disturbed without affecting the entire drain.

3. SAME—APPLICATION—SUFFICIENCY—SIGNERS.

Section 4379, 4382, and 4384, 2 Comp. Laws, when read in connection with section 4319, require, in a proceeding to improve an established drain, an application signed by not less than 10 freeholders of the township or townships in which the drain or the lands to be drained thereby and to be assessed therefor may be situated, three or more of such signers to be owners of lands liable to an assessment for benefits; they need not, however, be resident freeholders, and there need not be 10 freeholders from each township.

4. SAME—FEMALE FREEHOLDER.

A woman may be a statute freeholder, entitled to sign an application for the improvement of a drain, though she cannot be a qualified juror to condemn lands under section 2, article 18, of the Constitution.

5. SAME—WITHDRAWAL FROM APPLICATION.

After having launched proceedings to improve a drain, by filing the proper application, the applicants cannot cause it to be discontinued by joining in a remonstrance filed with the commissioner.

6. SAME—SPECIAL COMMISSIONERS—RELEASE OF RIGHT OF WAY
—EFFORTS OF COMMISSIONER.

When a landowner, when requested to give the right of way
for the improvement of a drain, refuses, and informs the
commissioner that he will contest the proceedings in court,
his action relieves the commissioner of further efforts to agree
with him, and makes the selection of special commissioners,
or a jury, necessary, even if all the other owners of land re-
lease both right of way and damages. (Sections 4322, 4325,
4326, 2 Comp. Laws.)

7. SAME—CITATION—SUFFICIENCY AS TO NONRESIDENTS.

Under section 4324, 2 Comp. Laws, the citation, in proceedings
to condemn lands for right of way for a drain, need not be
personally served upon, nor name, nonresident owners of
lands to be affected.

8. SAME—REVIEW—QUESTIONS CONSIDERED.

On certiorari to review proceedings for the improvement of a
drain, the facts are not reviewable.

9. SAME—RECORD—SUFFICIENCY.

Wrongful participation in the deliberations of the jury by the
drain commissioner, and the furnishing of evidence to them
after the submission of the case, can only be brought upon
the record by motion and affidavit.

10. SAME—EXCEPTIONS TO AWARD—EFFECT—REVIEW.

Exceptions to the award of the jury, in proceedings to estab-
lish a drain, based upon the affidavit of the landowner alleg-
ing misconduct on the part of the commissioner, amount
practically to a motion for a new trial, and the commissioner
having filed an affidavit denying misconduct, and the court
having overruled the exceptions, this court cannot determine
the truth of the disputed allegations.

11. SAME—COSTS AND FEES.

Section 6240, 2 Comp. Laws, as amended by section 15, Act No.
266, Pub. Acts 1899, is a provision of the railroad law distinct
from those relating to procedure, is not adopted in the drain
law, and does not authorize the allowance of attorney's, sten-
ographer's, and witness' fees in proceedings to establish
drains.

Error to Calhoun; Chester, J., presiding. Submitted
February 19, 1907. (Docket No. 75.) Decided July 1,
1907.

Certiorari by John C. Patterson and others to review

the action of Charles B. Mead, county drain commissioner, and William A. Lane, judge of probate, in locating and establishing a drain. There was an order dismissing the writ, and relators bring error. Affirmed.

*John C. Patterson,* for appellants.

*Hatch & Page,* for appellees.

OSTRANDER, J. The county drain commissioner of Calhoun county attempted, in a single proceeding, to extend, deepen, widen, and straighten three existing, independent township drains, known, respectively, as the Ball & Patterson, the Hopkins & Chase, and the Wilder creek. Each of these drains had existed for a period of 15 years and more. They connect, one with the other, and the necessity for deepening, widening, straightening, and extending the drainage channel, or canal, made by the three, and the necessity for taking private property for that purpose, and the compensation to be made therefor, have been determined by a jury, and the report of such jury made and confirmed. It appears, also, that the Wilder creek drain is wholly within the limits of one township, and that the other two drains extend, each of them, into two townships. Application in the present proceeding was made and filed in September, 1898, a remonstrance by all or some of the appellants was made and filed in February, 1899, the writ of certiorari was tested August 25, 1900, and the judgment of the circuit court dismissing the said writ was entered April 27, 1905. It appears, therefore, that for about seven years this attempted improvement in drainage has been suspended by this suit. In this court, to which the cause was removed by writ of error, appellants rely upon the assignments of error set out in the affidavit for the writ of certiorari, 52 in number, extended by subdivision to 85. These errors are, however, grouped, and are stated in the brief for appellants, as propositions, as follows:

"1. The county drain commissioner, under the statute,

did not have jurisdiction over the subject-matter of deepening, widening, straightening, and extending the township drains in question.

"2. These three separate township drains with their several assessment districts and their independent entities, cannot be joined in a proceeding to deepen, widen, straighten, and extend said several drains in one proceeding.

"3. The three township drain proceedings involved were without jurisdiction, and were absolute nullities, ab initio, and cannot constitute a legal basis for any drain proceedings.

"4. The application for the proceedings in question, filed with the drain commissioner on the 8th day of October, 1898, was defective and insufficient, and did not give respondents jurisdiction over the subject-matter of the said drain, or over the owners of the lands traversed thereby.

"5. No steps were taken and no efforts were made to secure the right of way in question and releases of damages therefor by negotiation with the landowners, or by purchase, before the commencement of the condemnation proceedings in question, which was a condition precedent, required to give the courts jurisdiction to act under the right of eminent domain.

"6. The first order of determination made by the drain commissioner April 10, 1899, was defective, insufficient, unauthorized, and void, and constituted no legal basis for the subsequent proceedings, and that the probate judge erred in overruling the motion to quash the said proceedings.

"7. The petition of the drain commissioner to the probate court for the appointment of special commissioners, filed August 5, 1899, and the facts established by the proofs upon the hearing thereof, were insufficient in law to confer jurisdiction upon the probate court in the premises, and that the probate judge erred in overruling the motion to quash said proceedings.

"8. The citations issued upon the said petition for special commissioners were not served, either personally or otherwise, upon several of the owners of land traversed by said drain, and such landowners have not had their day in court, and the probate court acquired no jurisdiction over their lands, or persons, and the probate judge erred in overruling the motion to dismiss the said petition and to quash the said proceedings.

"9. No order or determination to appoint special commissioners was ever entered or made of record in the probate court, and the said court thereby lost jurisdiction (if it ever acquired any) in the premises. The oral decision of the judge of probate, announcing that the prayer of the petition would be granted, was not made of record, is no part of the record, and is insufficient.

"10. The probate judge erred in overruling the several objections made to swearing an officer to select names for a jury, and in swearing such officer.

"11. The oath administered to and taken by the officer appointed to select names for the jury was insufficient and void.

"12. The probate judge erred in overruling the challenge made to the array of said jury.

"13. The venire issued by the probate court was defective, insufficient, and void for uncertainty.

"14. The oath administered to the jury was insufficient, and void upon its face for uncertainty.

"15. The report and award of the jury was defective, uncertain, unauthorized, and void, and the probate judge erred in overruling the exceptions filed thereto, and in confirming the said report and award.

"16. The probate judge erred in refusing to audit and allow the relators' bill of costs filed in said probate court, as provided for by the general railroad law, made a part of the drain law by reference, in cases where juries are demanded and condemn right of way for drains.

"17. The final order of determination made by the drain commissioner July 19, 1900, and filed in the county clerk's office July 21, 1900, was defective, insufficient, unauthorized, and null and void.

"18. Several clauses and provisions of the drain law of 1897 pursued in the proceedings at bar, are in conflict, not only with the Constitution of the State of Michigan, but are also in conflict with section 10 of article 1, and with the Fifth and Fourteenth Amendments to the Constitution of the United States, and are null and void."

A large number of objections may be disposed of without extended comment or discussion. The attacks made upon the proceedings which were taken in establishing the three township drains in question are none of them considered. 2 Comp. Laws, § 4381, provides that:

"All drains regularly established, opened or constructed

under any provisions of law heretofore existing, shall be deemed to be legal drains under this act. * * * And any drain that has been established for ten years shall be conclusively deemed to have been regularly established, and it shall be the duty of the county drain commissioner, where no records of such drains have been preserved, to see that the records of such drains are made in the most practicable manner in the drain records of their respective counties."

This last provision is found in the statute of 1885, and has since been in force. 2 Comp. Laws, § 4382, provides that:

"All the powers conferred by this act for establishing and constructing drains and for the enforcement of assessments thereof, shall also extend to and include the deepening, widening and extending of any drains which heretofore have been laid, or may hereafter be constructed."

Whatever questions may have been open to the persons interested in, and who were taxed for, the construction of these three township drains, it remains that proceedings were taken to formally establish each of them. The landowners released the right of way. The public had been in possession of, and had exercised dominion over, the right of way so acquired and the drains so laid for upwards of 15 years. *Zabel* v. *Harshman*, 68 Mich. 273, 281. Giving the statute (section 4381) prospective operation only, its effect is to conclusively establish the regularity of the proceedings.

We come, therefore, at once, to the particular proceeding. Here, also, we may dispose of many of the contentions made by saying that there is no objection to a single proceeding by the county drain commissioner to open, widen, straighten, deepen, and extend, three drains, established by township drain commissioners, where it appears, as it does here, that they, in fact, constitute one drainage canal, no portion of which can be much disturbed without affecting the entire drain. Each of these drains, and consequently all of them, are under the direct supervision and control of the county drain commissioner.

The action contemplated by petitioners affects them all and relates to the result to be accomplished by each of the three drains as originally constructed and the improvements which are now desired. These rulings are based upon the language of the statute, and are approved in *Tinsman* v. *Monroe Probate Judge*, 82 Mich. 562. The language of the statute answers, also, many other objections, not here repeated, to the sufficiency of the application filed with the drain commissioner. Fifteen signatures appear upon that application. The statute qualification of 10 of those signing is denied. The provisions of 2 Comp. Laws, §§ 4379, 4382, 4384, read in connection with section 4319, are held to require, in this proceeding, an application signed by not less than 10 freeholders of the township or townships in which such drain or the lands to be drained thereby and to be assessed therefor may be situated; three or more of such signers to be owners of lands liable to an assessment for benefits. They need not be resident freeholders (*Kinnie* v. *Bare*, 68 Mich. 625); and there need not be 10 freeholders from each township (*Brady* v. *Hayward*, 114 Mich. 331). We need not answer the objections that certain of the signers were not freeholders because holding their lands as vendees in executory contracts or with their wives as owners of estates by entireties. Excluding all such signers, 10 remain if we consider H. M. Bryant to be a freeholder within the meaning of the law. The objection to doing this, which is urged, is that H. M. Bryant is a woman, and that she cannot be a statute freeholder without being also a qualified juror to condemn lands under section 2, art. 18, of the Constitution of this State. The fact that jurors must be males, as well as freeholders, does not necessarily or reasonably support the conclusion that a female freeholder may not exercise the rights of a property owner, and join with other property owners in moving for public improvements. Counsel cites no authority for his position.

One other objection to the application may be noticed.

Two of the ten qualified signers joined in a remonstrance which was filed with the commissioner on February 4, 1899, before the commissioner had determined the necessity, etc., of deepening, widening, straightening, etc., the said drains, but after he had made a personal examination for the purposes of such a determination. It is said there was thereafter no proper application for the improvement. Here, again, no authority, statute or other, is given in support of the position of counsel. It is not suggested, in argument, to what point such proceedings may go and be then interrupted by the withdrawal of one or more of the original applicants. It is to be presumed that the fact of withdrawal will, in proper cases, exert some influence with the commissioner and the jury; but we are not prepared to say that, having launched the proceeding, applicants may cause it to be discontinued by protesting against further steps being taken.

In his application for the appointment of special commissioners, the drain commissioner averred that he had tried to obtain a release of right of way and damages from the several owners of land traversed by the drain, and had attempted, but had failed, to agree with the landowners for such releases. Appellants answered this petition, denying these facts. Appellants also moved the probate court to quash the proceedings for various reasons, supporting the motion by the affidavit of John C. Patterson. This motion was overruled. Later, before special commissioners were appointed, a jury was demanded by six of the appellants, and one was ordered. The only evidence, aside from the statements in the petition for special commissioners, of efforts to procure releases, is found set out in the affidavit for the writ of certiorari and admitted in the return thereto, which evidence is, in substance, that appellant John C. Patterson was requested to give the right of way, refused, and informed the commissioner that he should contest the drain proceedings in court. Certainly, there was no occasion to go further with this landowner, and his action

made the selection of special commissioners, or a jury, necessary, even if all other owners of land released both right of way and damages. 2 Comp. Laws, §§ 4322, 4325, 4326.   The facts set out in the petition of the drain commissioner are in no other way contradicted.   2 Comp. Laws, § 4325.   The petition was, in this respect, jurisdictionally sufficient.   *Grand Rapids, etc., R. Co.* v. *Weiden,* 69 Mich. 572, 70 Mich. 390.   It is said that the citation was not served personally upon William Martin, Electa J. Reynolds, and Darius Bickford.   They were all of them nonresident owners.   2 Comp. Laws, § 4324. William Martin was not named in the citation.   The statute has been amended since the decision in *Campau* v. *Charbeneau,* 105 Mich. 422, was made; the express provision now being that it shall not be necessary to name such owner or owners in the citation.   That case, relied upon by counsel for appellants, is therefore not controlling.   The citation was published in the manner pointed out by the statute.   We think it unnecessary to set out and discuss the various assignments of error·which challenge the validity of the drain law of 1897.   They have been examined, and the argument of counsel for appellants has been considered, with the result that they are overruled.   So, also, of the errors assigned upon the action of the probate court, it is sufficient to say that objections were made to the form of oath administered to the officer appointed to select a jury, to the order overruling a challenge to the array, interposed when the jury had been summoned, to the venire, to the oath to the jury.   We find nothing in the objections which requires discussion.   The thirty-third assignment of error contains 10 subdivisions following the averment that "the probate court erred in overruling the following objections to the confirmation of said findings, report, and award of said jury."   In the various subdivisions are set out the objections referred to, most of them allegations of facts.   For example, subdivision *c* reads:

"The said jury ignored and disregarded the evidence produced on the hearing upon the questions of the public necessity and the amount of damages," etc.

We cannot review the facts or the evidence in this proceeding.

It appears that, in support of exceptions to the award of the jury, John C. Patterson filed his affidavit. In opposition thereto, the drain commissioner filed an affidavit. In so far as these affidavits relate to the presence of the drain commissioner in the jury room, they are, in substance, as follows: Mr. Patterson swears that the drain commissioner informed him that, after the jury had determined the question of necessity, he (the commissioner) went into the jury room and was present when they determined the amount of damages, and furnished the jury certain data they sent for, the tax rolls from the county treasurer's office, and assisted the jury in making and formulating their findings, report, and award. The commissioner swears that his connection with making out the report of the jury was as an official to furnish blanks and measurements at the request of the chairman of the jury; that he had nothing to do with the fixing of damages or the amount paid for the lands which were condemned; that the only information asked of him was "the legal information which the jury wished to have in said case." Counsel for appellants states in his brief that, after the hearing had been closed, "tax rolls from the county treasurer's office and additional evidence were submitted to the jury and taken to the jury room without the knowledge and consent of the relators (appellants) and were considered and acted upon by the said jury." If this appeared in the record to be an undisputed fact, we should be obliged to consider whether in this proceeding advantage could be taken of it. Manifestly, the fact, if it existed, would not appear, unless it was brought upon the record by motion and affidavit. The statute provides (2 Comp. Laws, § 4325), that the court shall, when a jury is demanded, proceed in the same manner as is provided by

law in cases of taking private property for the use of rail-road companies. In proceedings to condemn lands for the use of a railroad company, the probate court may set aside the report of commissioners, or of a jury, for good cause shown. *Marquette, etc., R. Co.* v. *Houghton Probate Judge,* 53 Mich. 217; *Detroit, etc., R. Co.* v. *Campbell,* 140 Mich. 384. The objection made was, practically, a motion for a new trial. The law respecting the conduct of jurors and of parties, including the drain commissioner, in such proceedings, is not in doubt. *Detroit, etc., R. Co.* v. *Campbell,* supra; *Hudlemyer* v. *Dickinson,* 143 Mich. 250. But, necessarily, the fact of improper conduct must be established. Here the probate court, presumably, was of opinion that the fact was not established. The jury was entitled to have furnished to it certain data (2 Comp. Laws, § 4327), and the affidavit of the drain commissioner, while somewhat uncertain in meaning, may be reasonably construed to mean that he furnished the jury with nothing except the data he was by law required to produce. We cannot set the affidavit of Mr. Patterson over against that of the commissioner, and determine the truth of disputed allegations.

It is claimed, also, that upon the face of the award various irregularities are disclosed. The statute (2 Comp. Laws, § 4346) provides for a speedy review of proceedings in establishing a drain by certiorari, in which review, if any error be found in the proceedings, the court shall direct the county drain commissioner to correct such error or errors and then proceed the same as though no error had been made. We have examined the proceedings shown by the record with reference to the objections made to them by counsel for appellants. In doing so, we have failed to find jurisdictional error, and, if there are irregularities which should be corrected, they are not made to appear.

A bill of costs for attorney's, stenographer's, and witness' fees was presented in the probate court by counsel for appellant, and disallowed. The contention is that, as the

general railroad law governs the proceedings when a jury is demanded, that provision of that law (2 Comp. Laws, § 6240, as amended by Act No. 266, Pub. Acts 1899, § 15), must be given effect. This provision of the railroad law is distinct from those relating to procedure, is not adopted in the drain law, and we know of no authority for holding it applicable here.

We find no reversible error, and the judgment of the circuit court is affirmed, with costs.

MCALVAY, C. J., and GRANT, HOOKER, and MOORE, JJ., concurred.