OMAHA & NORTH PLATTE RAILROAD COMPANY ET AL.,
APPELLANTS, V. SARPY COUNTY ET AL., APPELLEES.

FILED JUNE 26, 1908. No. 15,230.

1. **Drains: LATERALS: PETITION.** The power given by section 2, art. I, ch. 89, Comp. St. 1881, to include a branch ditch, drain or watercourse necessary to secure the object of the improvement, whether mentioned in the petition or not, is not confined to such branches, ditches or drains as are wholly designed to drain the land lateral to the line of the main ditch.

2. ———: ———: **ASSESSMENTS: INJUNCTION: REVIEW.** The county board, in fixing assessments for benefits conferred by the construction of a branch ditch under the provisions of article I, ch. 89, Comp. St. 1881, acts judicially, and its judgment and findings will not be reviewed for error in an injunction suit brought to restrain the execution thereof.

3. ———: **INJUNCTION: NOTICE.** Where three railroad companies, being owner, lessee and sublessee, respectively, of a railroad, join in an action to restrain proceedings under the drainage act of 1881 (laws 1881, ch. 51), on the ground that due notice of such proceedings was not given, it is incumbent upon such plaintiffs to show want of knowledge of the existence of such proceedings in time to appear and contest the same.

4. ———: **DAMAGES: COLLATERAL ATTACK.** Where three companies are interested in a railroad which is claimed to be damaged by the improvement of a branch ditch which was constructed prior to the building of the road, the question of such damages is properly disposed of in the original proceedings; and the mere fact that no damages were allowed one of the companies does not make such proceedings void and subject to collateral attack.

5. **Constitutional Law: TITLES OF ACTS.** While by its title the drainage act of 1881 (Comp. St., ch. 89, art. I) is restricted to the purpose of draining swamp and marsh lands only, it is not void as in contravention of section 11, art. III of the constitution.

APPEAL from the district court for Sarpy county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters* and *W. H. Hatteroth,* for appellants.

*A. E. Langdon, William R. Patrick* and *E. R. Ringo,* contra.

CALKINS, C.

This was an action brought to enjoin proceedings under the drainage act of 1881. From a point north of its confluence with the Elkhorn, the Platte river runs in a southerly direction, forming the western boundary of Sarpy county. Between the river on the west and the bluffs on the east is a low-lying, swampy tract of bottom land, from one and a half to two and a half miles wide, which is subject to inundation from the overflow of both the Elkhorn and the Platte, as well as surface waters from the bluffs. Instead of descending from the bluffs to the river, this bottom slopes slightly to the east to a point where there is a depression running in a southerly direction; and following this depression a ditch had been constructed by the county authorities of Sarpy county in 1885. This ditch ran in a southerly direction, and discharged its waters into the river where it ran in an easterly course along the southern boundary of Sarpy county. In 1886 the plaintiff, the Omaha & North Platte Railroad Company, built what is commonly known as the "Burlington cut-off" between Ashland and Omaha. The road traversed this bottom in a northeasterly direction upon an earthen embankment, except at the point where it crossed the ditch in question. At this place a bridge was constructed. In 1903 a petition was filed with the county board of Sarpy county under the provisions of article I, ch. 89, Comp. St. 1881, praying said board to widen, deepen and alter such ditch; and such proceedings were had that such petition was granted, and the plaintiffs, the Omaha & North Platte Railroad Company and the Chicago, Burlington & Quincy Railroad Company, were assessed as benefits from such improvement the sum of $448.86. The plaintiffs thereupon brought this suit in the district court for Sarpy county to enjoin the collection of such tax and the construction of such improved ditch. A temporary injunction was allowed the plaintiff, the Chicago, Burlington & Quincy Railroad Company;

but upon the final hearing this was dissolved, and the district court entered a decree dismissing plaintiffs' petition, from which the plaintiffs appeal.

1. The county surveyor reported that to attain the object of the petition it would be necessary to construct a spur or branch ditch, commencing about half a mile northeast of the starting point of the main ditch, and intersecting it at a point about 100 feet from this said starting point. It is contended by the plaintiffs that intersecting the main ditch so near its commencement, such spur or branch ditch was really an extension of the main ditch, and not a spur or lateral, and that, since it was not described in the original petition, such petition failed to comply with the requirement of the statute that it should describe the route and termini of the same with reasonable certainty, and therefore conferred no jurisdiction upon the county board. Section 2 (ch. 89, art. I, *supra*) of the statute provides: "The petition for any such improvement shall be held to include any side lateral spur or branch ditch, drain or water course necessary to secure the object of the improvement, whether the same is mentioned therein or not." The plaintiffs place much stress upon the word lateral, and argue as if it qualified the words branch ditch, drain or watercourse, which it plainly does not. We think the inclusion of a ditch half a mile long, designed to drain the territory lying north and east of the initial point of the main ditch, is clearly within the provisions of the statute above quoted.

2. It seems that in the first report of the county surveyor he did not include the roadbed of the plaintiffs as part of the property to be benefited, and that at the suggestion or by the direction of the county board it was by him inserted in an amended report. It is also claimed that one of the benefits considered by the board was the increased tonnage that the road would receive from such improvement; and this is sought to be established by the testimony of one of the members of the county board. So far as the first part of this contention is concerned, if the

plaintiffs' property was in fact benefited, it should have been included, and the action of the county board in that regard was proper. That it was improper for it to consider such indirect or consequential benefit as the increase of tonnage is equally clear. But in determining this question the county board acted judicially. *Dodge County v. Acom*, 72 Neb. 71. If it erred in determining the question of benefits, its judgment was subject to revision and correction in a direct proceeding. To entitle the plaintiffs to enjoin the execution of such judgment they must show:· first, that they have a meritorious defense; second, that they have no adequate remedy at law; and, third, that their plight is in‚ no way attributable to their own neglect. *Bankers Life Ins. Co. v. Robbins*, 53 Neb. 44; *Cleland v. Hamilton Loan & Trust Co.*, 55 Neb. 13; *Kaufmann v. Drexel*, 56 Neb. 229. There is a total want of any reason for not raising these questions in a direct proceeding to correct any errors committed by the county board. To grant an injunction herein would simply be to use that remedy as a writ of error.

3. The plaintiff, the Omaha & North Platte Railroad Company, on the 1st day of December, 1886, leased the said road to the Chicago, Burlington & Quincy Railroad Company, and in the latter part of the year 1901 the plaintiff, the Chicago, Burlington & Quincy Railroad Company, leased the same to the plaintiff, the Chicago, Burlington & Quincy Railway Company, which was operating the road at the time of the proceedings in question. Notice was served upon the Omaha & North Platte Railroad Company and upon the Chicago, Burlington & Quincy Railway Company. No notice appears to have been served upon the plaintiff, the Chicago, Burlington & Quincy Railroad Company. It is contended that the notice to the Omaha & North Platte Railroad Company was insufficient because such notice described this plaintiff as the Omaha & North Platte Railway Company, and was given more than 40 days after the filing of the surveyor's report; but this report was

amended, and the notice was given within 40 days after filing the amended report; besides, this plaintiff appeared before said board and contested said proceeding. The proceedings were adjourned, and the notice given to the plaintiff, the Chicago, Burlington & Quincy Railway Company, was of this adjourned meeting.

It is contended by the defendant that because of their contractual relations there existed such a privity of interest among the three plaintiffs that all were bound by notice to one; but whether this is so, or whether the notice would be sufficient if questioned on appeal or error, we deem it unnecessary to consider. This is a suit in equity, and the plaintiffs must, as we have already seen, show that their failure to appear and defend their interests was not due to their own neglect. The burden is upon them to show that they had no actual notice in time to appear and raise the questions which they seek to present here. Had the plaintiffs been natural persons, their ignorance of the existence of these proceedings could have been established by their own evidence. Being corporations, and acting only through agents and officers, it was incumbent upon them to show upon what officer rested the duty of defending their rights in judicial proceedings, and by the testimony of such officer to establish the fact that he had no knowledge of the proceedings in question. One of the plaintiff's attorneys was sworn and testified that the firm of which he was a member had been attorneys for all the plaintiffs for years; that no notice was served upon any of the plaintiffs, and that no notice could have been served upon any plaintiff without his knowledge; that he appeared before the county board for the plaintiff, the Omaha & North Platte Railroad Company, to contest these proceedings. If this did not prove knowledge of the existence of the proceedings before the county board on the part of all the plaintiffs, it at least failed to prove want of such knowledge, which it was incumbent upon the plaintiffs to establish.

4. Damages were allowed the Omaha & North Platte

Railroad Company and the Chicago, Burlington & Quincy Railway Company for injuries they were supposed to have sustained by reason of the deepening and widening of the ditch; but none were allowed the plaintiff, the Chicago, Burlington & Quincy Railroad Company. It is contended that the failure to allow damages to the last named plaintiff avoids and makes void the whole pro- ceeding. The question whether any of the plaintiffs were entitled to damages was a disputed one, the evidence on the part of the defendants showing that the ditch where it passed under the railroad was already as wide and deep as it was proposed to make it, and that the bridge over the same was of ample dimensions to safely accom- modate it; while the witnesses on the other side were of the opinion that the additional amount of water pro- posed to be turned into the ditch was likely to cut its banks where it passed under the railroad, and require a lengthening of the bridge. This being a disputed ques- tion was one of the questions to be settled in the original proceeding, and cannot be raised collaterally.

In addition to this, there is no showing that the plain- tiff, the Chicago, Burlington & Quincy Railroad Com- pany, would have to bear any part of the expense of lengthening the bridge, if such action became necessary. Under a railroad lease the operating company usually bears such burdens, and, in the absence of any testimony to show that such expense would be, as among the plain- tiffs themselves, chargeable to the Chicago, Burlington & Quincy Railroad Company, there is no merit in this ob- jection.

5. Finally, the plaintiffs claim that article I, ch. 89, Comp. St. 1881 (laws 1881, ch. 51) is void as contraven- ing the provisions of section 11, art. III of the constitu- tion. The constitutionality of this act has been fre- quently assailed upon various grounds, but has always been upheld. *Darst v. Griffin*, 31 Neb. 668; *Dodge County v. Acom*, 61 Neb. 376, 72 Neb. 71; *Morris v. Washington*

*County,* 72 Neb. 174; *Tyson v. Washington County,* 78
Neb. 211. Now it is argued that it must be declared in-
valid because in the title it is described as an act to pro-
vide for the drainage of marsh and swamp lands, while in
the body of the act the description of the lands to be
drained is not so restricted. It is the rule that a statute
in conflict with the constitution yields only to the extent
of its repugnancy, and that where the provisions of an
act are broader than the title it is still valid as to such
provisions as are within the scope of its title. *Messenger
v. State,* 25 Neb. 674; *Union P. R. Co. v. Sprague,* 69 Neb.
48. It follows that the objection now raised applies only
in cases where the lands sought to be drained are not
properly embraced in the description "swamp or marsh
lands." This court has lately had occasion to consider
this question, and has held that the term "marsh" or
"swamp lands" has a wider significance than the terms
"marsh or swamp," and that the provisions of the act
may properly apply to land which from its low and level
character may, from excessive rainfall, retain at some
seasons of the year sufficient water so that it is rendered
incapable of cultivation. *Campbell v. Youngson,* 80 Neb.
322. It is there expressly said that power is conferred by
this act "to drain lands which are not, strictly speaking,
'marshes' or 'swamps,' but which are 'marsh or swamp
lands,' meaning thereby lands which are so situated as to
be rendered difficult or incapable of successful cultiva-
tion by reason of retaining in the soil or carrying on the
surface an excessive quantity of water during certain
portions of the year, even though at other times they
may be as solid, dry and firm as lands in general." The
above is an accurate description of the character and con-
dition of the lands in question. The circumstance that
they are occasionally inundated by overflows from the
Platte and Elkhorn, or that the plaintiff's embankment
has aggravated their swampy condition, does not change
their essential character, which is shown to have existed

before the construction of the railroad, and independently of any overflow from either river.

We therefore recommend that the judgment of the district court be affirmed.

FAWCETT, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.