CORNING v. POTTER.

1. DRAINS—STATUTES—PETITION TO EXTEND—INJUNCTION.

Section 4379, 2 Comp. Laws, authorizing the cleaning, widening, or extending of a drain upon the petition of five freeholders having specified interests, applies to the improvement of a drain in existence, not to the construction of branches or laterals to such drain, nor the extension of a single drain into a system of laterals and branches.

2. SAME—DRAIN COMMISSIONER—DELAY—EXCUSE FOR DELAY.

The amount of work in the hands of a county drain commissioner preventing his action upon the petition for more than two years was a sufficient excuse for the delay.

8. SAME.

In so far as the work done upon the drain that already existed was an improvement to the drain, it was supported by the petition and was to that extent valid.

4. SAME—AMENDMENT—JURISDICTION.

The drain commissioner did not lose jurisdiction of the petition by reason of the amendment to the statute, Act No. 111, Pub. Acts 1907, changing the requirements as to those signing the petition.

5. SAME—CONSTITUTIONAL LAW.

Nor is the drain law unconstitutional for omitting to provide for equal notice to nonresident landowners: the provision for such notice is ample.

Appeal from Gratiot; Searl, J. Submitted April 10, 1912. (Docket No. 86.) Decided October 1, 1912. Rehearing denied December 18. 1912.

Bill by Anna Corning, as executrix and trustee of the estate of William Corning, deceased, against Elon P. Potter, Gratiot county drain commissioner, and others, for an injunction and other relief. From a decree for complainant she appeals. Modified and affirmed.

*G. W. Davis*, for complainant.

*George P. Stone*, for defendant Potter.

OSTRANDER, J. The bill was filed to restrain the return of certain lands as delinquent for drain taxes, to have such taxes adjudged to be void, and for a further decree determining that the proceedings in the probate court to obtain the right of way for a drain, the order establishing it, and, in fact, that all of the drain proceedings, were taken without jurisdiction. At the hearing a decree was entered, reciting that all of the proceedings for the establishment and location of the drain, prior to the application to the probate court for the appointment of special commissioners, were regular and valid, but that the proceedings taken to condemn the land of the complainant and the assessment of taxes thereon were null and void. It was therefore ordered that the collection of the taxes and the return of the lands by the county treasurer as delinquent for said taxes be perpetually restrained and en-

joined; and the drain commissioner was authorized to begin proceedings *de novo* to secure or condemn the right of way for the drain across complainant's land and for a reassessment of taxes thereon. The defendants, the county drain commissioner and the county treasurer, have not appealed from the decree. The complainant has appealed, and her contentions are in this court discussed under five propositions, stated by her as follows:

"*First.* The application for the drain did not confer jurisdiction upon the commissioner to lay out the seven drains mentioned therein as one drain, nor to act at all thereunder, even though the place sought to be drained thereby constitutes in its entirety one watershed.

"*Second.* If the petition to the commissioner conferred upon him jurisdiction to lay out the drains, he lost such jurisdiction by delay for more than two years.

"*Third.* The amendment to the statute in relation to the qualifications of the petitioner for a drain, which amendment was made pending the delay of the commissioner to act on the petition, and was without a saving clause as to pending proceedings, deprived such proceedings of all legal force as authority to the drain commissioner to proceed to lay out, establish, or construct the drain.

"*Fourth.* The statute does not provide equal notice to nonresidents that it does to residents of the proceedings, to take their land for right of way for the drain; and it is therefore unconstitutional and void.

"*Fifth.* The circuit court, in chancery, had jurisdiction of the subject-matter in controversy, for the purpose of restraining the return of complainant's land for the illegal drain tax, and to remove the cloud from the title of her land, created thereon by the levy of such tax, and also to adjudge void the proceedings whereby it was attempted to take her land for the right of way for the drain; hence it has jurisdiction to grant to her complete relief, and for that purpose to adjudge the petition for the drain to be insufficient to confer jurisdiction on the commissioner to proceed over again to acquire the right of way, or to relevy the tax."

The principal question, and the one which receives the greatest attention from counsel, arises under the first of

the propositions stated, and to understand it a considerable reference must be made to the facts. In the townships of Pine River and Arcada, in Gratiot county, there is a marsh, or swamp, more than six miles in length and in places two miles or more in width. It covers portions of sections 7, 8, 17, 18, 19, 20, 29, 30, 31, and 32 in Pine River township and sections 5 and 6 in Arcada township. A creek known as Runyon creek, runs through a portion of this swamp, with an outlet in Pine River on section 5, in the township of Arcada. It is said, and the fact does not appear to be seriously disputed, that at some time two drains were laid in this marsh, or swamp, known as the Runyon Creek and Gallagher drains, and that, to some extent at least, they followed the channel of the creek. As would be supposed, the boundaries of the marsh, or swamp, are not regular, but branches or arms of it extend away from the main body of the marsh into higher lands. From the plat which is produced, it would appear that when the original drains were constructed, or afterwards, and before the present proceeding was instituted, and either by public authority or private action, some laterals were dug which connected with and emptied into the main drain; but upon this subject the record affords no specific information. It does not appear that the plan or scheme of drainage first adopted embraced or involved the idea of laterals to the main drains. The Runyon Creek and Gallagher drains connect the one with the other, and together form a continuous, and in purpose and accomplishment a single, drainage canal. In March, 1906, a petition, dated February 23, 1906, was filed with the county drain commissioner, in which it was represented that certain drains, known and designated as the Runyon Creek and Gallagher drains, needed—

"Cleaning out, deepening, widening and straightening the entire length of above-named drains; also the location and construction of branches. The cleaning out, etc., of main drain to commence near the west 1–8 line of sec. 5, Arcada township; thence following the general course

of Runyon creek, across sections 31, 32, 29, 30, 20, 17; also the course of Gallagher drain across sections 17, 8, 5, and 6 in Pine River township. Said drains to be straightened at such points as may by you be deemed necessary."

There followed a description of six branches, so-called, each described as running from a point in the main drain to a described terminal in the surrounding land; some of them extending to the right and some to the left of the main canal. Three of them enter the main drain above and two of them below the lands of complainant.

The petition continues:

" That such cleaning out, deepening, widening, straightening, and location of branch drains of said drain is a necessity, by reason of the old drains having become filled to such an extent as to render them useless as drains, and that dams are formed in many places, causing serious damage to property, and detrimental to public health, convenience, and welfare; that the depth and width be such as you may determine after a survey has been made; that a strip of land four rods wide on each side of the center line be used as right of way for use in construction."

The petition had 29 signatures. It recited that 5 of them, whose names are mentioned in the body of the petition, " are the owners of lands liable to an assessment for benefits in the cleaning out, deepening, widening, straightening, and improving by adding branches."

The county drain commissioner certified that on the 23d of April, 1907, in his official capacity, he personally passed over and along and examined the route of the proposed drain, and that from such examination he is of opinion that "said proposed drain is a necessity, and will be, if constructed, conducive to the public health, convenience, and welfare, and that the application for the said drain as proposed should be granted;" and he ordered and determined that a survey and measurement of the line of " said proposed drain " should be made. In July, 1908, a survey was made, and the minutes of the center line and

the specifications for cleaning out, deepening and widening the main drains, and for locating and establishing the branches, appear in the record. The branches or laterals are described in these minutes by numbers, and the lengths are given therein as follows:

Length of main drain_____587.94 chains
Length of branch No. 1_____132.00 chains
Length of Branch No. 2_____28.80 chains
Length of Branch No. 3_____20.25 chains
Length of Branch No. 4_____9.16 chains
Length of Branch No. 5_____41.75 chains
Length of Branch No. 6_____84.00 chains
        Total length of drain _____903.90 chains

The reason given for the delays on the part of the county drain commissioner is that the large amount of work in his office prevented earlier action. In May, 1909, he made an application to the probate court for the appointment of special commissioners to secure the necessary right of way, and on the 28th of May in that year a citation was issued by the court. The citation was published on the 9th and 16th days of July, 1909, and gave notice of a hearing on the 20th day of July, 1909, on which day the court made an order appointing special commissioners. Proof of publication of the citation appears to have been filed September 1, 1909, and the notices of the hearing were posted in Pine River township on the 9th of July, 1909. The complainant, executrix and trustee, resides in the State of New York. There is no evidence that a copy of a citation was mailed to her; and no showing was made that her residence was not known to the drain commissioner. The drain was constructed substantially as applied for, and substantially in accordance with the first order of determination and the survey. The main line of the drain intersects the S. W. ¼ of section 20, Pine River township, owned by the complainant as executrix of the Corning estate; and a branch or lateral drain, known as Branch No. 3, extends from the main drain, now called and known as No. 73 drain, across the E. ½ of the S. W.

¼ of section 20 to land on the N. W. ¼ of the S. E. ¼ of section 20, owned by one Post. The cost of the improvement, the itemized account of which was made July 20, 1909, was $20,500. There is an item of $3,100 for constructing bridges. The amount of the contract for constructing Branch No. 3 is given at $251.10. As I understand the estimate or computation referred to, the cost of the six branches or laterals, exclusive of bridges (if there were any bridges or laterals), was about $4,400. To the township of Pine River was apportioned, for alleged public benefits, $3,177.50; to the land of the Corning estate for special benefits, $922.50. Besides the S. W. ¼ of section 20, the Corning estate owns the S. E. ¼ of section 19.

In some States of the Union (Nebraska is an example), the statute expressly permits the laying out and construction of lateral spurs of a drain, where that is necessary to secure the improvement, and whether they are mentioned in the petition or not. See *Omaha, etc., R. Co.* v. *Sarpy County*, 82 Neb. 140 (117 N. W. 116). It is the contention of the defendants (appellees) that in providing for extensions of existing drains our statute permits laterals, if such laterals are necessary to secure the improvement desired to be made, when they are asked for in the petition. In the opinion filed in the court below, the point now considered was dismissed with the statement:

" This was one drain proceeding with six branches, all constituting one drainage system, and, under the authorities, was permissible "— and *Patterson* v. *Mead*, 148 Mich. 659 (112 N. W. 742), was cited.

Complainant moved the court for a rehearing upon two questions, one of them the one now under consideration; and it appears that a reargument was had, and a supplemental opinion was filed. Again referring to the *Tinsman* and *Patterson Cases*, the court said in part:

" If three drains may all be cleaned out, deepened, and widened and extended under one petition, there is no good reason why a drain with branches, as in this case, may

not be constructed under one petition, where the proposed branches are set out in the petition, and it is all undertaken and carried on as one drain. The objection is made that by allowing this to be done, owners of lands on these branches may secure a drain, where, if they were obliged to have the branch constructed as a separate drain, they would not secure it, because of not being able to get enough signers on a petition. This same objection would apply where a drain turned a square corner, and was extended through a rise of ground and in front of one farm only after reaching the low ground above the turn. Yet, it being one drain, no one would raise the question here presented. This drain is one drain, and drains one watershed. It has been constructed, and the evidence shows that it benefits the lands of complainant, and, I think, to the extent of the assessment made against same; but, as this assessment is set aside, that is not important now."

In the case of *Patterson* v. *Mead*, it was objected, in proceedings instituted to review the action of the county drain commissioner and judge of probate, that three separate township drains, with their several assessment districts and their independent entities, could not be joined in a proceeding to deepen, widen, straighten, and extend said several drains. It was held there was no objection to a single proceeding by the county drain commissioner to open, widen, straighten, deepen, and extend three drains established by township drain commissioners, where it appeared that they in fact constituted one drainage canal, no portion of which could be much disturbed without affecting the entire drain. It was said:

"The action contemplated by petitioners affects them all, and relates to the result to be accomplished by each of the three drains as originally constructed and the improvements which are now desired. These rulings are based upon the language of the statute, and are approved in *Tinsman* v. *Monroe Probate Judge*, 82 Mich. 562 (46 N. W. 780)."

The statute (2 Comp. Laws, § 4379) provides that when a drain, or any portion of it, needs cleaning out, straight-

ening, deepening, widening, or extending, any five free-
holders of the township, or townships, in which it is sit-
uated, one or more of whom shall be owners of land liable
to an assessment for benefits in the cleaning out, etc.,
may make application in writing to the county drain com-
missioner, setting forth its necessity, provided that, when-
ever any such drain shall need straightening, deepening,
widening, or extending, the same proceedings shall be
had throughout in every respect as are provided in this
act for the locating and construction of a drain in the first
instance.   This section deals, not with a system of drain-
age, but with an established drain.   In the case at bar,
petitioners refer to an established drain, or drains, and
ask for improvements thereto.   What improvements were
warranted ?   This depends upon the meaning of the word
" extending " in the statute.   It does not mean straightened,
or widened, or deepened, because these words are all of
them employed in connection with the word " extending,"
or the word "extension."   "Wide" and "deep" are
both terms of dimension, and the other term, as applied
to a ditch or a canal, is "length."   Generally the act pro-
vides for laying out, establishing, constructing, and main-
taining drains, and for cleaning out, etc., established
drains.   We need not determine whether a drain with
spurs and laterals may be established.   Undoubtedly the
scientific and economical drainage of a large body of wet
land may demand drains, or a drain, with more than two
terminals, with forks and spurs.   We do not question
either the desirability of the spurs and laterals which are
the subject of discussion here.   But we are confronted
with the statute.   We find that to move the drain com-
missioner a different petition is required for the establish-
ment of a drain than for the lengthening of an established
drain.   This confirms the opinion that the legislature, in
providing for the extension of an established drain, meant
the lengthening of the established drain, and did not mean
the extension of a single drain into a system of drains by

laterals and branches. If it were otherwise, then, in theory at least, a very small drain, lawfully established, might be used to build up a large system of drainage, upon a petition which would be insufficient to establish any branch or lateral as a separate drain.   Examining the subject from every point of view, and impressed, as we are, with the merit and economy of the system of drainage actually established, we nevertheless feel obliged to hold that, for the purpose of constructing the six lateral, or spur, drains, the petition was. wholly ineffective.   The petition was sufficient for the purpose of improving the existing drain.

We have examined the other objections hereinbefore stated, and are of opinion that the second, third, and fourth are without merit.   The delay of the commissioner is explained. *Ranney Refrigerator Co.* v. *Smith,* 157 Mich. 302 (122 N. W. 91); *Chase* v. *Porter,* 166 Mich. 21 (131 N. W. 106); *Davison* v. *Otis,* 24 Mich. 23.   Assuming, as we do, that the petition was sufficient to support some action of the commissioner, jurisdiction was not lost by the amendment to the law affecting the petition.

We are not disposed to hold the statute unconstitutional. The proceeding is special, in the nature of a proceeding *in rem,* and no good reason is perceived for saying that nonresident landowners may not be generally notified of the pendency of the proceeding.   The complainant is in a court of equity, and we have no doubt of the jurisdiction to render such a decree as is now indicated.

Our conclusion requires the reversal and setting aside of the decree of the court below and the entry of a decree saving the proceeding, so far as the improvement of the established drain is concerned, and making complainant liable for a proper proportion of the cost of such improvement, but discharging said lands from any cost or expense or tax for the laying out and constructing of the said lateral drains.   No portion of complainant's lands have been con-

demned, and there is no occasion for further proceedings to condemn them. We apprehend that counsel will be able to agree upon the details of a decree which will determine finally the rights of interested parties.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, and STONE, JJ., concurred. BIRD, J., did not sit.